MICHAEL P. FATTIBENE *v.* DENNIS J. KEALEY
(6759)

BORDEN, DALY and O'CONNELL, Js.

Argued December 20, 1988—decision released May 16, 1989

*Arthur T. Fattibene,* for the appellant (plaintiff).

*Jeremy A. Mellitz,* for the appellee (defendant).

BORDEN, J. The principal issues in this appeal involve the circumstances under which the trial court, in the exercise of its inherent authority, may impose sanctions of attorney's fees for a course of bad faith pleading. This case is a sequel to our decision in *Fattibene* v. *Kealey,* 12 Conn. App. 212, 530 A.2d 206 (1987) (*Fattibene I*). In *Fattibene I,* the plaintiff appealed from the

judgment of the trial court, rendered after acceptance of the report of an attorney trial referee, and from an order of the trial court imposing sanctions on the plaintiff and his counsel. We found no error in the judgment rendered in accordance with the referee's report, and we dismissed the plaintiff's appeal from the court's order of sanctions for lack of a final judgment because the court had not yet determined the amount of the sanctions. Id., 216.

The plaintiff now appeals from the subsequent judgment of the trial court imposing sanctions of attorney's fees in the amount of $1170. The plaintiff also appeals from the court's denial of his motion for sanctions against the defendant. We find error.

Some further background is in order. The plaintiff brought suit alleging that the defendant had been negligent and had breached a warranty in repairing the transmission in the plaintiff's car. The case was referred to an attorney trial referee. On December 27, 1985, the referee filed his report finding that the plaintiff had not established any of his claims. During the course of the hearing before the referee, both parties moved for costs against the other. The plaintiff's motion, based on alleged bad faith pleading, was denied because the referee found no bad faith. The defendant's motion for costs pursuant to Practice Book § 111 was denied because the referee found that "there was not a sufficient showing of unreasonableness to warrant such an award."

On January 6, 1986, the plaintiff moved for an extension of time to object to or to move to correct the referee's report. Meanwhile, the defendant moved for judgment in accordance with the report. Thereafter, the plaintiff filed an objection to the report and to the defendant's motion for judgment, and the court granted the plaintiff's motion for an extension of time.

On January 30, 1986, the plaintiff filed a motion to correct the referee's findings of fact, and on February 5, 1986, he filed a memorandum and objection to acceptance of the report. On February 10, 1986, the defendant filed a brief in support of his motion for judgment accepting the report. On February 26, 1986, the plaintiff filed a supplement to his earlier memorandum and objection to acceptance of the report, and a reply brief in opposition to the defendant's brief in support of the defendant's motion for judgment. The trial court referred the entire matter back to the referee.

On March 21, 1986, the parties appeared before the referee pursuant to the court's order. At that proceeding, the plaintiff filed with the referee a motion to "continue the fact-finding hearing," based on the claims, supported by an affidavit of his counsel, that there was newly discovered material evidence and that the original hearing had ended before he had an opportunity to present rebuttal evidence to the defendant's case. The referee denied that motion. The parties then argued the other issues that were included in the referral back to the referee. On February 25, 1986, the plaintiff filed an objection to the referee's ruling on the plaintiff's motion to continue the fact-finding hearing.

On April 3, 1986, the referee rendered a supplemental report, in which he noted that "the file is a procedural morass." He first articulated his earlier ruling on the plaintiff's motion to continue the fact-finding hearing. With respect to the plaintiff's claim of newly discovered evidence, the referee found that the plaintiff had not shown that he had exercised due diligence to discover the evidence before trial or that the evidence did not exist at the time of trial, and that the plaintiff had not shown that the alleged new evidence was material or that it would change the outcome of the case. With respect to the plaintiff's claim that the referee had denied him an opportunity to rebut the defendant's

case, the referee found that the plaintiff did not offer or attempt to offer rebuttal evidence other than through posttrial motions. The referee stated: "At best the plaintiff's argument on this issue is specious."

The referee's supplemental report then addressed the plaintiff's motion, dated January 10, 1986, objecting to the referee's factual findings, and his motion dated January 30, 1986, to correct the factual findings. The referee devoted sixteen pages of his supplemental report to rejecting the plaintiff's claims in detail, with the sole exception that one factual finding in the original report was amended in accordance with the plaintiff's request.

On April 4, 1986, the plaintiff moved for an extension of time to file an exception to the referee's supplemental report. On April 8, 1986, the defendant filed an objection to the plaintiff's motion for extension of time. On April 11, 1986, the plaintiff filed his exception to the referee's supplemental report and a motion to introduce new evidence.

On April 21, 1986, counsel for the parties appeared before the trial court at short calendar. The short calendar list indicated three matters set down for consideration by the court: (1) the plaintiff's exception to the referee's supplemental report; (2) the plaintiff's motion for extension of time; and (3) the plaintiff's motion to introduce new evidence.

On the same day, but before the short calendar proceedings on those three calendared motions, the defendant filed with the clerk of the court the motion that ultimately led to this appeal, namely, a motion for sanctions against the plaintiff. That motion requested that the court impose sanctions on the plaintiff on the ground that the plaintiff had repeatedly filed pleadings in bad faith, with intent to harass the defendant and to delay the entry of judgment. The legal bases of the

motion were Practice Book § 111,[1] General Statutes § 52-99,[2] General Statutes § 51-84,[3] "the court's announced policy of enforcing rule 11 of the Federal Rules of Civil Procedure in this Judicial District," and "the court's inherent power to supervise and regulate attorneys coming before it . . . ."

During the course of the short calendar proceedings, the defendant referred to his filing of the motion for sanctions. The court stated: "All right. I'll read the transcript. I'll read the arguments. I will entertain your motion for sanctions if I feel it's dilatory. I will impose a sanction." The plaintiff thereupon began to argue his motion to introduce new evidence, noting: "That's one of the three motions I brought today." After brief argument by both parties regarding that motion, the court stated: "I will take the papers. . . . I'm serious. If it's dilatory, we have rule 11 here."

One week later, on April 28, 1986, at approximately 9 a.m., the plaintiff filed with the clerk of the court a thirteen page objection to the defendant's motion for

[1] Practice Book § 111 provides: "Any allegation or denial made without reasonable cause and found untrue shall subject the party pleading the same to the payment of such reasonable expenses, to be taxed by the court, as may have been necessarily incurred by the other party by reason of such untrue pleading; provided that no expenses for counsel fees shall be taxed exceeding two hundred fifty dollars for any one offense. Such expenses shall be taxed against the offending party whether he prevails in the action or not."

[2] General Statutes § 52-99 provides: "Any allegation or denial made without reasonable cause and found untrue shall subject the party pleading the same to the payment of such reasonable expenses, to be taxed by the court, as may have been necessarily incurred by the other party by reason of such untrue pleading; provided no expenses for counsel fees shall be taxed exceeding ten dollars for any one offense."

[3] General Statutes § 51-84 provides: "(a) Attorneys admitted by the superior court shall be attorneys of all courts and shall be subject to the rules and orders of the courts before which they act.

"(b) Any such court may fine an attorney for transgressing its rules and orders an amount not exceeding one hundred dollars for any offense, and may suspend or displace an attorney for just cause."

sanctions. On the same day, the parties appeared before the court at short calendar. The only matter calendared was the defendant's motion for judgment on the referee's report. The colloquy between the court and counsel indicates that the court had already ruled on the defendant's motion for sanctions, and that its memorandum of decision was being typed and would soon be sent to counsel. At the court's suggestion, the defendant's motion for judgment went off the calendar.

On May 5, 1986, the court filed its memorandum of decision, dated April 28, 1986, on the defendant's motion for sanctions. The court referred to the defendant's motion as being pursuant to Practice Book § 111, General Statutes §§ 51-84 and 52-99, and the court's inherent authority to supervise the conduct of attorneys appearing before it. The court did not refer, however, to rule 11 of the Federal Rules. The court stated: "Plaintiff and his counsel are charged with knowing the rulings of practice in this court and the statutes controlling the conduct of proceedings before the court. A review of this file can lead to only two possible conclusions concerning the conduct of plaintiff and his counsel; either they are unfamiliar with the practice of law before the court or they have chosen to ignore the rules and statutes governing that practice. Neither event can or will be tolerated by the court."

The court found, from its review of the file, that the plaintiff had repeatedly asserted claims that were unsupported by the record, and had demonstrated a lack of understanding or knowledge of the legal authority controlling the disposition of the case. It specifically referred to the fact that the plaintiff's attempt, after trial, to introduce "new evidence" that was not offered at the trial, without any possible justification for his failure to do so, was in derogation of his burden to present his complete case at trial. The court stated: "The fact that the plaintiff, by design or oversight,

failed to meet the burden does not justify the frivolous and bad faith efforts to correct his error after trial.''

The court concluded as follows: "A review of the entire file leads to the inevitable finding that the plaintiff and his counsel, intentionally or through lack of knowledge, have conducted themselves in a bad faith manner and/or with a frivolous disregard for the practice of law before this court.'' The court therefore imposed the following sanction: "The plaintiff and his counsel are taxed all costs incurred by the defendant, including all reasonable attorney's fees for defendant's counsel since March 21, 1986.'' The court directed the defendant's counsel "to submit the itemization of the costs involved, with appropriate affidavits or proof by April 30, 1986.'' On May 5, 1986, this ruling of the court was reflected in a judgment in which the court accepted the reports of the attorney trial referee, and in which the court "adjudged that the following sanction is imposed: The plaintiff and his counsel are taxed all costs incurred by the defendant, including all reasonable attorney's fees for defendant's counsel since March 21, 1986.''

The plaintiff appealed from that judgment to this court. We found no error in the judgment accepting the referee's report, and dismissed the appeal as to the sanctions for lack of a final judgment. *Fattibene I,* supra.

After our decision in *Fattibene I,* further proceedings took place in the trial court. On December 9, 1987, the court held a hearing on the amount of the costs to be imposed as sanctions against the plaintiff. In its supplemental memorandum of decision dated January 29, 1988, the court referred to its inherent authority to impose reasonable sanctions to compel observance of its rules, and to Professor Moore's commentary to rule 11 urging that courts pay greater attention to pleading

abuses and to imposing sanctions when appropriate, in order to discourage dilatory or abusive tactics and frivolous claims or defenses. J. Moore, W. Taggart & J. Wicker, Moore's Federal Practice § 7.05. The court repeated its earlier finding that the plaintiff and his counsel, either intentionally or through lack of knowledge, conducted themselves "in a bad faith manner and/or with a frivolous disregard for the practice of law before [the] court," and it stated that it was assessing "costs and reasonable attorney's fees incurred by the defendant from the date it felt the frivolous pleading began." It concluded: "A hearing was held by this court as to these costs on 12/9/87. As a result of this hearing, the court awards attorney's fees in the amount $1170." The court then rendered a substituted supplemental judgment which stated, inter alia, that on "December 9, 1987 . . . the parties appeared and were heard as to the amount of said sanctions," and that "the Defendant should be awarded attorney's fees in the amount of $1170 . . . ."

Subsequently, the court denied the plaintiff's motion for sanctions against the defendant. This appeal followed.

The plaintiff raises several claims of error. The decisive claim is that the court awarded sanctions without affording the plaintiff a proper opportunity to be heard. Although our conclusion on that claim requires that the case be remanded for a new hearing on the defendant's motion for sanctions, we address the plaintiff's other claims to the extent that they are likely to arise in the course of that hearing.

I

The plaintiff claims that the trial court imposed sanctions of attorney's fees without affording the plaintiff a proper hearing on the defendant's motion. We agree.

"Unless otherwise provided in these rules or ordered by the court . . . all motions . . . must be placed on the short calendar list. No motions will be heard which are not on said list and ought to be have been placed thereon . . . ." Practice Book § 206. "Matters to be placed on the short calendar shall be assigned automatically by the clerk without written claim . . . . No such matters shall be so assigned unless filed at least five days before the opening of court on the short calendar day." Practice Book § 208. These rules implement the fundamental principle of judicial administration " '[t]hat no matter shall be decided unless the parties have fair notice that it will be presented in sufficient time to prepare themselves upon the issue.' " *Connolly* v. *Connolly,* 191 Conn. 468, 475–76, 464 A.2d 837 (1983), quoting *Osterlund* v. *State,* 129 Conn. 591, 596, 30 A.2d 393 (1943). This principle is particularly appropriate with respect to a claim of bad faith or frivolous pleading by an attorney, which implicates his professional reputation. Cf. *Connolly* v. *Connolly,* supra, 478. "Like other sanctions, attorney's fees certainly shall not be assessed lightly or without fair notice and an opportunity for a hearing on the record." (Footnote omitted.) *Roadway Express, Inc.* v. *Piper,* 447 U.S. 752, 767, 100 S. Ct. 2455, 65 L. Ed. 2d 488 (1980).

These rules and the principle they embody were violated in this case. The defendant filed his motion for sanctions on the morning of the day he presented it to the court. It was never placed on the short calendar, and the defendant brought it up only tangentially during the course of the argument on the plaintiff's calendared motions. Furthermore, one week later the plaintiff filed a lengthy objection to the motion, but the record is clear that by that time the court had already ruled on the motion.

The defendant argues that despite this procedural defect the plaintiff was not ultimately harmed because,

at the hearing held by the court on December 9, 1987, after our decision in *Fattibene I,* the issue of whether sanctions should be imposed was fully litigated. This claim is not supported by the record before us on this appeal.

Both the memorandum of decision of the trial court, dated January 29, 1988, and the court's substituted supplemental judgment reflecting that memorandum of decision, clearly indicate that the hearing on December 9, 1987, was concerned with the *amount* of the sanctions to be imposed, not *whether* they should be imposed. This is consistent with our dismissal of the plaintiff's appeal in *Fattibene I* regarding sanctions; because there had been no determination of the amount of the sanctions, there was no final judgment on that issue. Neither party has supplied us with a transcript of the December 9, 1987 hearing. Furthermore, the parties were before the court on March 14, 1988, in connection with the plaintiff's motion for sanctions, inter alia, when the court, referring to the remand following *Fattibene I,* stated: "The Appellate Court ruled on [the original judgment in the case.] The only thing they sent to me was to establish a fee." Although ordinarily it is the appellant's burden to furnish us with a proper record; *Gill* v. *Petrazzuoli Bros., Inc.,* 10 Conn. App. 22, 30 n.4, 521 A.2d 212 (1987); where as here the appellee wishes us to conclude that a matter was litigated contrary to what the court's memorandum of decision, judgment and oral remarks indicate, the appellee should bear the appellate burden of producing a record as a basis for such a claim. Under these circumstances, therefore, we have no basis to believe that the trial court gave the plaintiff a proper opportunity to be heard in response to the defendant's motion for sanctions.

## II

Although the lack of a proper hearing is dispositive of this appeal, we consider certain of the plaintiff's other claims of error because they are likely to arise on the remand. These claims involve the various possible sources of the trial court's authority to impose sanctions in this case.

We first consider the plaintiff's claim that the court erred by basing its order of sanctions on rule 11 of the. Federal Rules of Civil Procedure.[4] We agree.

Although in its intial memorandum of decision granting sanctions, before *Fattibene I,* the court referred only to Practice Book § 111, General Statutes §§ 51-84 and 52-99, and its inherent authority, it is clear from

[4] Rule 11 of the Federal Rules of Civil Procedure provides: "Rule 11. SIGNING OF PLEADINGS, MOTIONS, AND OTHER PAPERS: SANCTIONS. Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name, whose address shall be stated. A party who is not represented by an attorney shall sign the party's pleading, motion, or other paper and state the party's address. Except when otherwise specifically provided by rule or statute, pleadings need not be verified or accompanied by affidavit. The rule in equity that the averments of an answer under oath must be overcome by the testimony of two witnesses or of one witness sustained by corroborating circumstances is abolished. The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. If a pleading, motion, or other paper is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the pleader or movant. If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee."

the record that its ultimate order of sanctions was based in part on rule 11 of the Federal Rules of Civil Procedure. The defendant's motion specifically invoked what it referred to as the court's policy of enforcing rule 11. The court, during the April 21, 1986 short calendar session, stated: "We have rule 11 here." Furthermore, in its supplemental memorandum of decision, dated January 29, 1988, granting the amount of the sanctions, the court referred not only to its inherent authority but also to the commentary of Professor Moore on rule 11.

The rules of practice for the Superior Court are adopted by the judges of the Superior Court in the exercise of their inherent rule-making authority. *State* v. *King,* 187 Conn. 292, 297, 445 A.2d 901 (1982); *State* v. *Clemente,* 166 Conn. 501, 514, 353 A.2d 723 (1974). Practice Book § 7 provides the procedure for the promulgation of rules adopted by the judges.[5] Although on occasion our Supreme Court has looked to federal rules for guidance in deciding cases; see, e.g., *State* v. *Nardini,* 187 Conn. 513, 526, 447 A.2d 396 (1982) (Fed. R. Evid. 609 [b], although "not ours," may "serve as a rough bench mark in deciding whether trial court discretion has been abused"); we know of no authority permitting an individual judge or judicial district simply to adopt a particular rule of federal civil procedure, especially one as specific and detailed as rule 11. See footnote 4, supra. Thus, to the extent that the court relied on federal rule 11, it erred.

We next turn to the plaintiff's claim that the court erred by relying on Practice Book § 111. See footnote

---

[5] Practice Book § 7 provides: "Each rule hereafter adopted shall be promulgated by being published once in the Connecticut Law Journal. Such rule shall become effective at such date as the judges of the superior court shall prescribe, but not less than sixty days after its promulgation. Prior to such adoption, there shall be published in the Connecticut Law Journal a summary of the proposed rules and a statement that a copy of those proposed rules will be mailed to any person upon request. The published notice of the proposed rule shall also state the time when, the place where and the manner in which interested persons may present their views thereon."

1, supra.[6] We conclude that this rule provides sanctions for filing substantive factual allegations or denials of substantive factual allegations without reasonable cause, when those allegations or denials are found to be untrue. We reach this conclusion from an examination of the language and history of Practice Book § 111.

The rule provides that "[a]ny allegation or denial made without reasonable cause and found untrue shall subject the party pleading" it to pay the reasonable expenses necessarily incurred by the other party "by reason of such untrue pleading . . . ." The focus of the language is on allegations and denials *"found untrue"* and on the expenses incurred by the other party "by reason of such *untrue* pleading . . . ." (Emphasis added.) Id. It is apparent that in this context "true" means "conformable to fact: in accordance with the actual state of affairs and not false or erroneous." Webster, Third New International Dictionary. This conclusion is buttressed by the last sentence of Practice Book § 111, which provides that "[s]uch expenses shall be taxed against the offending party whether he prevails in the action or not."

Furthermore, this is the sense in which Practice Book § 111 and its predecessors have been interpreted. See *Wojcik* v. *Metropolitan Life Ins. Co.,* 124 Conn. 532, 535–36, 1 A.2d 131 (1938) (the defendant should have confined denial "to the only fact that it could or intended to contest"); *Jennings Co., Inc.* v. *DiGenova,* 107 Conn. 491, 494, 141 A. 866 (1928) (the defendant should have been charged with the plaintiff's reasonable expenses "since the defendant had untruly pleaded denial of facts without reasonable cause"); *Hatch* v. *Thompson,* 67 Conn. 74, 76, 34 A. 770 (1895) (plea of

---

[6] General Statutes § 52-99 mirrors Practice Book § 111, but limits the amount of attorney's fees to ten dollars for any one offense. We need not rule in this case on the conflict between the amount stated in the statute and the amount stated in the rule.

general denial to material allegations of complaint which the defendant knows to be true subjects him to payment of expenses incurred to establish the truth).

Our examination of the defendant's motion for sanctions and the court's memoranda of decision thereon does not disclose a violation of Practice Book § 111. The defendant claimed in his motion for sanctions that the plaintiff, in his motions, had advanced certain procedural claims in bad faith, mischaracterized certain rulings by the referee, misstated evidence, pervasively disregarded the rules of evidence, attempted to prejudice the referee and the court against the defendant, made inappropriate references to the referee, and that the "sheer volume and repetitious nature of the [plaintiff's] pleadings [were] indicative of an attempt to harass and delay." Although we do not countenance such conduct, and although such conduct, if established, could form the basis of sanctions under the court's inherent authority, it does not fall within the confines of "untrue" substantive factual allegations or denials under Practice Book § 111.

To the extent that the trial court relied on Practice Book § 111 in ruling on the defendant's motion for sanctions, it erred. On the remand, therefore, such reliance would be improper.

We turn, therefore, to the final source of authority for sanctions in this case, namely, the court's inherent authority. We conclude that the court has inherent authority to impose sanctions for bad faith pleading, even in the absence of a violation of a specific rule[7] or

[7] In this connection, we note that Practice Book § 119 provides in pertinent part: "The signing of any pleading, motion, objection or request shall constitute a certificate that the signer has read such document, that to the best of the signer's knowledge, information and belief there is good ground to support it, and that it is not interposed for delay." Although this rule does not specifically provide for sanctions for its violation; compare, e.g., Practice Book § 241 (court may charge party with expenses of opponent

order of the court. We also conclude, however, that the court did not properly exercise that authority in this case.

There is ample authority in this state for sanctions against an attorney for violation of a specific rule or order of the court. General Statutes § 51-84 (b) provides that the court "may fine an attorney for transgressing its rules and orders in an amount not exceeding one hundred dollars for any offense, and may suspend or displace an attorney for just cause." That statute, "encompassing all judicial proceedings, recognizes the inherent power of the courts to impose sanctions against attorneys . . . in civil matters" as well as criminal matters. *In re Mongillo,* 190 Conn. 686, 692, 461 A.2d 1387 (1983). It is part of the court's inherent power " 'to provide for the imposition of reasonable sanctions to compel the observance of its rules.' " Id., 690, quoting *Stanley* v. *Hartford,* 140 Conn. 643, 648, 103 A.2d 147 (1954); see also *Gionfrido* v. *Wharf Realty, Inc.,* 193 Conn. 28, 34, 474 A.2d 787 (1984); *Thode* v. *Thode,* 190 Conn. 694, 699, 462 A.2d 4 (1983). The question raised by this appeal, however, is whether the court has the inherent authority to impose sanctions against an attorney and his client for a course of claimed dilatory, bad faith and harassing litigation conduct where there is no specific rule or order of the

in establishing genuineness of document or truth of matter which party unreasonably refused to admit pursuant to Practice Book §§ 238 through 240); the trial court could undoubtedly impose sanctions for its violation. See *In re Mongillo,* 190 Conn. 686, 692, 461 A.2d 1387 (1983).

Furthermore, although this rule, rather than federal rule 11, conceivably could have formed a basis of part of the court's sanctions decision in this case, we do not consider it as such, for three reasons. First, the defendant did not invoke Practice Book § 119 in his motion for sanctions. Certainly, when an attorney or a party is faced with a claim for sanctions, the legal basis of that claim should be as specific as is reasonably possible. Second, it is clear that the defendant's motion for sanctions went far beyond the confines of this rule. Third, the court did not rely on this rule in either of its sanctions decisions.

court that the plaintiff is claimed to have violated. See footnote 7, supra. We conclude that, subject to appropriate limitations, the court has such authority.

This state follows the general rule that, except as provided by statute or in certain defined exceptional circumstances, "the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser." *Alyeska Pipeline Co.* v. *Wilderness Society,* 421 U.S. 240, 247, 95 S. Ct. 1612, 44 L. Ed. 2d 141 (1975); *Ernst Steel Corporation* v. *Reliance Ins. Co.,* 13 Conn. App. 253, 261, 536 A.2d 969 (1988). That rule does not apply, however, "where the opposing party has acted in bad faith." *Roadway Express, Inc.* v. *Piper,* supra, 765–66. It is generally accepted that the court has the inherent authority to assess attorney's fees when the losing party has acted in bad faith, vexatiously, wantonly or for oppressive reasons. Id., 766; *Dow Chemical Pacific Ltd.* v. *Rascator Maritime S.A.,* 782 F.2d 329, 344 (2d Cir. 1986). This bad faith exception applies, not only to the filing of an action, " 'but also in the conduct of the litigation.' " *Roadway Express, Inc.* v. *Piper,* supra, 766, quoting *Hall* v. *Cole,* 412 U.S. 1, 15, 93 S. Ct. 1943, 36 L. Ed. 2d 702 (1973). It applies both to the party and his counsel. *Roadway Express, Inc.* v. *Piper,* supra. Moreover, the trial court must "make a specific finding as to whether counsel's [or a party's] conduct . . . constituted or was tantamount to bad faith, a finding that would have to precede any sanction under the court's inherent powers" to impose attorney's fees for engaging in bad faith litigation practices. Id.

We agree, furthermore, with certain principles articulated by the Second Circuit Court of Appeals in determining whether the bad faith exception applies. "To ensure . . . that fear of an award of attorneys' fees against them will not deter persons with colorable claims from pursuing those claims, we have declined

to uphold awards under the bad-faith exception absent both 'clear evidence' that the challenged actions 'are entirely without color and [are taken] for reasons of harassment or delay or for other improper purposes,' . . . and 'a high degree of specificity in the factual findings of [the] lower courts.' " (Citations omitted.) *Dow Chemical Pacific Ltd.* v. *Rascator Maritime S.A.,* supra, 344, quoting *Weinberger* v. *Kendrick,* 698 F.2d 61, 80 (2d Cir. 1982). "Whether a claim is colorable, for purposes of the bad-faith exception, is a matter of 'whether a reasonable attorney could have concluded that facts supporting the claim *might be established,* not whether such facts *had been established.*' " (Emphasis in original.) Id., quoting *Nemeroff* v. *Abelson,* 620 F.2d 339, 348 (2d Cir. 1980). To determine whether the bad faith exception applies, the court must assess whether there has been substantive bad faith as exhibited by, for example, a party's use of oppressive tactics or its wilful violations of court orders; "[t]he appropriate focus for the court . . . is the conduct of the party in instigating or maintaining the litigation." *Dow Chemical Pacific Ltd.* v. *Rascator Martime S.A.* supra, 345. Cf. *Eastway Const. Corp.* v. *City of New York,* 762 F.2d 243, 253 (2d Cir. 1985) (F. R. Civ. P. 11 has more expansive standard for imposition of sanctions than court's inherent powers).

It is apparent that the trial court in this case did not follow these principles and impose these restrictions in making its sanctions decisions.[8] On the remand, the

---

[8] In this connection, we note the trial court's finding that the attorney trial referee, in his supplemental report, had raised a "very real concern that the plaintiff might be engaged in bad faith proceedings before the court. If plaintiff or his counsel had not previously been aware of the questionable nature of their tactics, the supplemental report should have awakened them to the problem." We find no support in the referee's supplemental report for this finding. The closest statement by the referee to such a concern was the statement, with regard to the plaintiff's claim that he was denied an opportunity to present rebuttal evidence, that "[a]t best the plain-

defendant's motion for sanctions is to be adjudicated in accordance with these principles and restrictions.

## III

Finally, we consider the plaintiff's claim that the court erred in denying his motion for sanctions. This claim is without merit.

The plaintiff's motion was based on Practice Book § 111, General Statutes § 51-84 and the Rules of Professional Conduct 3.3 The plaintiff claimed that the defendant had made certain specific untrue allegations and denials in his answer without reasonable cause, that his counsel had made false and misleading allegations in certain affidavits and statements in court, and that the defendant had given wilfully false and misleading testimony under oath during the course of the case. The court heard this motion on March 14, 1988, and on March 17, 1988, issued the following ruling: "A review of the file in conjunction with the transcripts contained therein would not cause this court to grant sanctions against the defendant. The motion for sanctions is denied."

It is obvious from our discussion above that the task of determining whether sanctions should be imposed is inherently fact bound, and requires carefully circumscribed discretion to be exercised by the trial court. The plaintiff's claims on appeal simply ask us to find facts that the trial court did not find. Furthermore, the plaintiff did not seek a further articulation from the trial court of its decision. The plaintiff has not established that the trial court abused its discretion in denying his motion for sanctions.

---

tiff's agrument on this issue is specious." Such a response by the referee falls far short of a finding or clear indication of bad faith litigation tactics so as to alert the plaintiff to the likelihood of sanctions to be forthcoming. Furthermore, we note that the critical factual findings supporting the bad faith exception must be supported by "clear evidence." *Dow Chemical Ltd.* v. *Rascator Maritime S.A.,* 782 F.2d 329, 344 (2d Cir. 1986).

There is error in part, the substituted supplemental judgment dated January 29, 1988, is set aside, and the case is remanded for a new hearing on the defendant's motion for sanctions.

In this opinion the other judges concurred.