[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION FOR SPECIAL FINDING
The Amended Complaint in this action alleged that the plaintiff, Verdie Holden, was injured when she tripped over a driveway apron "leading to a public sidewalk" in the City of Hartford. It further alleged that the defendants, George C. McIntosh and Betty McIntosh, who owned the property over which the public sidewalk passed, were negligent in various ways, including their construction of the apron and their failure to warn third parties about the danger of the apron. The complaint made identical allegations as to the defendant, Helen Nixon, who also owned property which abutted the public sidewalk on which the plaintiff fell.
The Complaint also alleged that the driveway apron was a part of the public roadway as defined in Connecticut General Statutes § 13a-149 and that the City of Hartford was negligent in that it erected and maintained the apron.
On December 15, 1993 the plaintiff withdrew her claim against the City of Hartford after entering into a settlement agreement whereby the City paid her $25,000. She pursued her claims against the other defendants, George and Betty McIntosh and Helen Nixon and her case against them was tried to a jury.
At the time of the trial it was clear under the law of this state that the owner of land abutting a public right of way is under no duty to keep the public sidewalk in a reasonably safe condition unless an ordinance specifically imposed such a duty on the landowner, Wilson v. New Haven, 213 Conn. 277, 280,567 A.2d 829 (1989), or the landowner was instrumental in creating or maintaining the dangerous condition on the highway. Sawacki v.Connecticut Ry. Lighting Co., 129 Conn. 626, 633, 30 A.2d 556
(1943). There was no ordinance in effect which imposed a duty on the defendant homeowners to keep the sidewalk over their property safe for public travel. CT Page 10254
Notwithstanding the allegation in the Complaint that the defendant landowners had created the sidewalk apron, the only evidence introduced at trial was that the City of Hartford had constructed the apron and had later removed it. There was no evidence presented that the landowners had done anything to create, change or maintain the apron. Moreover, it appeared that the plaintiff never had any such evidence, even when she filed the complaint which alleged that the landowners had created the apron.
The court granted the defendants' Motion for Directed Verdict at the conclusion of the plaintiff's case.
The defendants McIntosh and Nixon have moved for a special finding under Connecticut General Statutes § 52-226a which provides:
 In any civil action tried to a jury, after the return of a verdict and before judgment has been rendered thereon, or in any civil action tried to the court, not more than fourteen days after judgment has been rendered, the prevailing party may file a written motion requesting the court to make a special finding to be incorporated in the judgment or made a part of the record, as the case may be, that the action or a defense to the action was without merit and not brought or asserted in good faith. Any such finding by the court shall be admissible in any subsequent action brought pursuant to subsection (a) of section 52-568.[1]
There are no appellate court cases interpreting § 52-226a. However, there are several Superior Court decisions interpreting that statute. In Indomenico v. Mr. Sparkle Car Wash. Inc., Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 372997 (September 4, 1992, Missal, State Trial Referee) the court recognized that under § 52-226a the moving party must prove (1) that the action was without merit and (2) that the action was not brought in good faith. The court found that the "[t]he fact that the jury unanimously decided in favor of the defendant is evidence that the action was without merit" under General Statutes § 52-226a). On the subject of good faith the court stated:
 The phrase "good faith" can be interpreted in several ways depending on the type of law suit brought. However, "in common usage, it has a well defined and generally CT Page 10255 understood meaning, being ordinarily used to describe that state of mind denoting honesty of purpose, freedom from intention to defraud, and, generally speaking, means being faithful to one's duty or obligation."
Id., quoting Snyder v. Reshenk, 131 Conn. 252, 257, 38 A.2d 803
(1944). Applying this standard to the facts before it, theIndomenico court held that it could not, "from the evidence educed at the trial and from the pleadings, find that the defendant or her attorney had a state of mind indicating a dishonest purpose, intended to defraud the defendant or was unfaithful to their duty or obligation."
In Clinipad Corp. v. Aplicare, Inc., Superior Court, judicial district of New Haven at New Haven, Docket No. 235252 (May 21, 1991, Fracasse, J.), the court, faced with motions for attorney's fees under Connecticut General Statutes § 35-54, a portion of the Connecticut Uniform Trade Secrets Act (CUTSA), as well as motions for special findings under General Statutes § 52-226a, stated that although "[n]o definition of `bad faith' is provided in CUTSA," "[p]rinciples which should be considered in deciding a claim of `bad faith' are explained in Fattibene v. Kealey, 18 Conn. App. 344,361, 558 A.2d 677 (1989)":
 A claim is made in bad faith upon the record showing that it is "entirely without color and [is taken] for reasons of harassment or delay or for other improper purposes . . . . Whether a claim is colorable, . . . is a matter of whether a reasonable attorney could have concluded that facts supporting the claim might be established, not whether such facts had been established."
Clinipad Corp. v. Aplicare, Inc., supra, quoting Fattibene v.Kealey, supra. The court made a finding that the plaintiff's actions were without merit and not brought in good faith where no evidence was introduced on the claim of misappropriation and the claims were made for no proper purpose "but for the purpose of being oppressive."
The court finds that this case is without merit and that the plaintiff brought the action without knowledge of any facts which, if proven, would have created liability in the defendants.
The defendants argue, in essence, that the maintenance of an action which is so obviously lacking in merit is the equivalent of CT Page 10256 bad faith. This definition of "bad faith" is not consistent with that suggested by the Appellate Court in Fattibene v. Kealey,supra, or the Supreme Court in Snyder v. Reshenk, supra. It ignores the principles cited with approval by the Court inFattibene:
 We agree, furthermore, with certain principles articulated by the Second Circuit Court of Appeals in determining whether the bad faith exception applies. "To ensure . . . that fear of an award of attorneys' fees against them will not deter persons with colorable claims from pursuing those claims, we have declined to uphold awards under the bad-faith exception absent both `clear evidence' that the challenged actions `are entirely without color and [are taken] for reasons of harassment or delay or for other improper purposes,'. . . and `a high degree of specificity in the factual findings of [the] lower courts.'" (Citations omitted. ) Dow Chemical Pacific Ltd. v. Rascator Maritime S.A., supra, 344, quoting Weinberger v. Hendrick, 698 F.2d 61, 80 (2d Cir. 1982)."
18 Conn. App. at 360-361.
This action was clearly without merit, and undoubtedly caused the defendants to incur unnecessary expense. However, § 52-226a
requires the court to find both lack of merit and bad faith. The court finds that the action was maintained due to the inability or unwillingness of the plaintiff's attorney to understand the law as it applied to the facts of the case, but does not find that there was any intent to harass or other improper motives on the part of the plaintiff and, therefore, cannot find that the action was not brought in good faith within the meaning of Connecticut General Statutes § 52-226a.
By the Court, Aurigemma, J.