[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
On July 17, 2001 this court found that Attorney Nancy Burton violated multiple sections of our Rules of Professional Conduct. In accordance with the order contained in that adjudication, a hearing was held on August 14 for the purpose of determining the proper sanctions to be imposed upon the attorney for her misconduct.
Minutes before the opening of court, the undersigned was served in CT Page 14917 chambers with a "Motion for Stay and/or Disqualification" which makes reference to a suit for injunctive and declaratory relief which Attorney Burton instituted against the undersigned in United States District Court for the District of Connecticut entitled, Nancy Burton v. Hon. A. WilliamMottolese, The complaint alleges the existence of a "constitutional infirmity (of the court) to participate in these proceedings" based upon a "previously repeatedly manifested actual bias and hostility against [Attorney Burton], her clients, the law and the fundamental right of due process."[1]
The court noted that the motion began with the following assertion. "The plaintiffs who remain in these proceedings and the undersigned move for a stay, etc." (Emphasis added). When the court questioned Attorney Burton whether she had consulted with or had obtained the authorization of the remaining plaintiffs to bring the motion, Attorney Burton evaded and equivocated to the point where, reluctantly, it became necessary to threaten her with contempt in order to obtain straight answers. Finally, after asking the same question more than five times it inevitably became clear to the court that she had neither consulted with nor obtained the authorization of the remaining plaintiffs. The motion was taken under advisement and it is now hereby denied.
After restating the purpose of the proceeding the court announced that it would permit the participants to offer oral argument and/or evidence concerning the aggravating and mitigating circumstances set forth in § 9.0 of the Standards for Imposing Lawyer Sanctions adopted by the American Bar Association.
"The professional conduct of attorneys in Connecticut is governed by the Rules of Professional Conduct, as found in the Practice Book. Although the Rules of Professional Conduct define misconduct; see Rules of Professional Conduct 8.4;[2] They do not provide guidance for determining what sanctions are appropriate. For this reason, Connecticut courts reviewing attorney misconduct have looked to the American Bar Association's Standards for Imposing Lawyer Sanctions (Standards), which do provide guidance. The Standards which were officially promulgated in 1986, have not been officially adopted in Connecticut. They are, however, used frequently by the Superior Court in evaluating attorney misconduct and in determining discipline." Statewide Grievance Committeev. Egbarin, 61 Conn. App. 445, 460 (2001).
The court's responsibility at this phase of the proceeding is guided and informed by certain other relevant codified provisions found in our body of law. The section of the Rules entitled "Scope" contain the following advice. "The rules presuppose that whether or not discipline should be imposed for a violation, and the severity of a sanction, depend CT Page 14918 on all the circumstances, such as the wilfulness and seriousness of the violation, extenuating factors and whether there have been previous violations". Practice Book § 2.37 authorizes a reviewing committee of the Statewide Grievance Committee to impose several different sanctions short of suspension and disbarment. Though not expressly conferred upon the court there is no good reason to believe that such sanctions are unavailable to the court pursuant to its inherent powers. In re: Durant,80 Conn. 140 (1907). Practice Book § 2-44 expressly authorizes this court for just cause to suspend or disbar an attorney as does General Statute § 51-84. Finally, General Statute § 51-94 renders admissible in a disciplinary proceeding of this nature, evidence of the general character, reputation and professional standing of the attorney. In addition to the above, the A.B.A. standards contain the following applicable provisions.
Standard 3.0 of the A.B.A Standards for Imposing Lawyer Sanctions provides:
"In imposing a sanction after a finding of lawyer misconduct, a court should consider the following factors: (a) the duty violated; (b) the lawyer's mental state; (c) the potential or actual injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors."
Standard 9.1 of the A.B.A. Standards for Imposing Lawyer Sanctions provides:
"After misconduct has been established, aggravating and mitigating circumstances may be considered in deciding what sanction to impose."
The aggravating and mitigating factors referred to above which the court must consider are the following:
9.2 Aggravation
 9.21 Definition. Aggravation or aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed.
9.22 Factors which may be considered in aggravation. Aggravating factors
include:
 (a) prior disciplinary offenses; (b) dishonest or selfish motive; (c) a pattern of misconduct; (d) multiple offenses; CT Page 14919 (e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency; (f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process; (g) refusal to acknowledge wrongful nature of conduct; (h) vulnerability of victim; (i) substantial experience in the practice of law; (j) indifference to making restitution.
9.3 Mitigation
 9.31 Definition. Mitigation or mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed.
9.32 Factors which may be considered in mitigation. Mitigating factors include:
 (a) absence of a prior disciplinaty record; (b) absence of a dishonest or selfish motive; (c) personal or emotional problems; (d) timely good faith effort to make restitution or to rectify consequences of misconduct; (e) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (f) inexperience in the practice of law; (g) character or reputation; (h) physical or mental disability or impairment; (i) delay in disciplinary proceedings; (j) interim rehabilitation; (k) imposition of other penalties or sanctions; (l) remorse; (m) remoteness of prior offenses.
Beginning with Standard 3.0 the following are the court's findings.
(a) Duty violated. The misconduct found violated Attorney Burton's duty to her clients, the public, the legal system and the profession.
(b) The lawyer's mental state. The misconduct found in every instance was wilful and performed with full knowledge of the circumstances and consequences.
(c) The actual or potential injury caused by the lawyer's misconduct. While the misconduct caused direct monetary loss only to Katherine Finch CT Page 14920 because she was required to incur legal expense in retaining Attorney Michael Simko, the misconduct caused serious intangible injury to the Sullivans and the other plaintiffs who gave of their time to come to court to testify in order to rectify a wrong that had been committed against them. Additionally, the misconduct caused serious harm to public confidence in the bar and to the integrity of the civil justice system.
(d) The existence of aggravating or mitigating factors[3]
 AGGRAVATION
(A) Prior Disciplinary Offenses.
Attorney Burton has been disciplined in the following matters and for the following reasons.
 (1). Michael v. Burton, CV88 295948 (1989), Danbury J.D. (Mottolese, J.) Reprimand. Unfounded, outrageous allegations of misconduct by Judge Howard Moraghan and other court personnel. At footnote 22 of its decision of July 17, 2001 the court mistakenly referred to this case as Anjone v. Burns.
(2). Voog v. Burton CV90 0113 (1991). Reprimand. Violation of Rule 3.4(a), (c) and
(f) of the Rules of Professional Conduct.
 (3). Fairfield Grievance Panel v. Burton CV96-0024 (1997). Reprimand. Violation of Rule 8.2(a) and 8.4(d). This reprimand was affirmed on appeal by McWeeny, J. CV97-057337, J.D. Hartford/New Britain at Hartford, September 24, 1998, reversed on procedural grounds in Burton v. Statewide Grievance Committee, 60 Conn. App. 698 (2000). The complaint is currently being reheard by the Statewide Grievance Committee.
 (4) Moraghan v. Burton, CV97-0338, (2000). Reprimand. Violation of Rule 8.2(a); appeal to Superior Court pending.
 (5) Fairfield Judicial District Grievance Panel v. Burton, CV98-0368. Reprimand. Violation of Rule 3.1; appeal to Superior Court pending.
 (6) Bartel v. Renard, 96 CIV-6463 (JSM). U.S. District Court for the Southern District of New York, October 27, 1999. Order of Honorable John S. Martin, Jr. Joint and several award of attorneys fees of $41,335.03 for obstruction of a court order and wilful/wanton misconduct.
CT Page 14921
 (7) Bartel v. Renard 96 CV 6463 (JSM). U.S. District Court of the Southern District of New York, December 16, 1999, order of Honorable John S. Martin, Jr. Contempt of court order resulting in joint and several award of $5,050.00.
 (8) Monsky v. Moraghan 99-7822. Summary Order of U.S. Court Appeals for 2nd Circuit, June 1, 2000. Show cause order for sanctions of $5,000 and double costs for blatantly frivolous appeal.
 (9) Burton v. Moraghan et al. CV No. 3:98 CV 1490 (AHN) September 6, 2000. U.S Magistrate Judge Holly B. Fitzsimimons, award of attorneys' fees and expenses of $5,200 for violation of court order; confirmed by the Court, Nevas, J.
(b) Dishonest or Selfish Motive
As found by the court on July 17, Attorney Burton clearly acted out of selfish and dishonest motives. Support for this finding may be found in the July 17 adjudication, particularly at part II "Conflict of Interest", III "Misrepresentation to the Court", IV "Conduct Toward the Court".
(c) A Pattern of Misconduct
Attorney Burton's continued course of conduct as evidenced by (i) her considerable record of prior disciplinary sanctions, (ii) the unprofessional practices described in the July adjudication, (iii) and her complete refusal to recognize the wrongfulness of her conduct establishes a clear and resolute pattern of misconduct.
(d) Multiple Offenses
In addition to her nine prior documented instances of sanctioned misconduct the number of violations of specific sections of the Rules of Professional Conduct is large. If multiplied by the number of plaintiffs affected by her actions that total would reach several hundred.
(e) Bad faith obstruction of the disciplinary proceeding by intentionallyfailing to comply with rules or orders of the disciplinary agency.
In this case the court is the disciplinary agency. While this court has issued no order, such as an injunction, which would limit or impair Attorney Burton's right to attempt to prevent the court from completing the sanction phase of the proceeding, fundamentally implicit in the court's mission is the need to complete its self initiated task. The CT Page 14922 court deems the federal litigation to be a transparent attempt to obstruct and intimidate the court from carrying out its final responsibility to impose appropriate sanctions. The court notes that the grounds alleged in the federal action are substantially the same as the grounds which Attorney Burton has asserted in state court pleadings and papers, to wit: an attack on the fairness and integrity of the court.
In order to constitute bad faith there must be "clear evidence" that Attorney Burton's actions "are entirely without color and [are taken] for reasons of harassment or delay or for other improper purposes Whether a claim is colorable. . . . is a matter of whether a reasonable attorney could have concluded that facts supporting the claim might be established." Fattibene v. Kealey, 18 Conn. App. 344, 360-361 (1989). This court holds that under no circumstances could any "reasonable attorney" conclude that there are any facts supporting Attorney Burton's federally asserted claim. She has therefore indulged in a bad faith attempt to obstruct the action of this court.
(f) Submission of false evidence, false statements or other deceptivepractices during the disciplinary process.
Attorney Burton has renewed and reiterated many of the baseless claims which she asserted during the investigatory phase of this proceeding. She has continued to misrepresent the facts even to the end. As pointed out above, Attorney Burton's Motion for Stay and/or Disqualification of August 14, 2001 makes the wholly false statement that "the plaintiffs who remain in these proceedings. . . . move for a stay and/or disqualification". In fact, Attorney Burton admitted to the court after persistent questioning and consistent evasiveness that she had no authorization from any of the remaining plaintiffs to file that pleading.
As for deceptive practices, the court believes that Attorney Burton's numerous evasive and equivocal answers given in both the investigatory and the sanction phase of this proceeding were deceptive because they were calculated to mislead the court.
(g) Refusal to acknowledge wrongful nature of conduct.
Attorney Burton has steadfastly refused to acknowledge the wrongful nature of any of her conduct. Instead, she has lashed out at each participant in this proceeding and even some who have not participated, and has accused each of misconduct. The most recent example of this is a statement she made to the court at the August 14 hearing that the Statewide Grievance Committee has engaged in "a serious pattern of abuse for many years against her." CT Page 14923
(h) Vulnerability of victim
This court believes that society in general is vulnerable to overzealous attorneys whose judgment is clouded by obsessive self interest. The court does not identify any particular traits of vulnerability among the plaintiffs. However, the civil justice system is the real victim here. The judges who make the system work are especially vulnerable to this type of conduct because they have limited, if any, ability to protect themselves from unsubstantiated attacks. The system suffers immeasurable harm when its constituent members are treated with open and aggressive disdain by an attorney who practices within it.
(i) Substantial experience in the practice of law.
Attorney Burton was admitted to the New York Bar in 1977 and to the Connecticut Bar in 1985. Attorney Burton has acquired extensive experience in the field of litigation, especially in environmental and land use matters.
(j) Indifference to making restitution
If the court were able to devise a way in which Attorney Burton could repair the damage which she has done to public confidence in the civil justice system and the institution of the judiciary she clearly would be unwilling to carry it out because she believes that she has done no wrong.
 MITIGATION
Here the court will review only those factors which bear no similarity to and therefore are not the converse of the aggravating factors considered above.
 (a) Personal or emotional problems. The court is unaware of any identifiable personal or emotional problems.
 (b) Character or reputation. Attorney Burton enjoys a good reputation as an attorney in the community according to her husband Mr. William H. Honan and a client Mr. David White, both of whom testified.
 (c) Delay in disciplinary proceedings. None except for Attorney Burton's efforts to halt the proceedings by use of the Federal courts.
(d) Interim rehabilitation. — None CT Page 14924
 (e) Imposition of other penalties or sanctions. No other penalties or sanctions have been imposed for any of the cited conduct.
(f) Remorse — None. Instead, hostile defiance.
 (g) Remoteness of prior offenses. While two of the disciplines are ten or more years in age, the remainder are within the past five years.
The court notes that there are no factors which are neither aggravating nor mitigating.
The imposition of sanctions for attorney misconduct is a grave responsibility for the court. The court also recognizes the seriousness of the interests that must be safeguarded.
"An attorney as an officer of the court in the administration of justice, is continually accountable to it for the maimer in which he [she] exercises the privilege which has been accorded to him [her]. His [her] admission is upon the implied condition that his [her] continued enjoyment of the right conferred is dependent upon his [her] remaining a fit and safe person to exercise it, so that when he [she], by misconduct in any capacity, discloses that he [she] has become or is unfit or unsafe person to be entrusted with the responsibilities and obligations of an attorney is his [her] right to continue in the enjoyment of his [her] professional privilege may and ought to be declared forfeited. In re: Peck, 88 Conn. 450 (1914). Therefore, if a court disciplines an attorney, it does so not to mete out punishment to an offender but [so] that the administration of justice maybe safeguarded and the courts and the public protected from the misconduct or unfitness of those who are licensed to perform important functions of the legal profession.Statewide Grievance Committee v. Botwick 226 Conn. 299, 307 (1993);"Statewide Grievance Committee v. Shluger, supra at 675. (Internal quotations marks omitted; alternate citations omitted).
The evidence in this case reveals a pattern of pervasive misconduct in so many facets of the practice of law that Attorney Burton's very fitness to practice law has been called into question. It is incomprehensible to the court that after twenty five years of practice Attorney Burton fails to demonstrate a proper understanding of the professional standards imposed on members of the bar. What elevates the seriousness of her behavior to a critical level is the fact that not only have rules of professional conduct been violated, but much of her professional misconduct has been directed toward the administration of justice. Courts cannot function if trial attorneys believe that they have the right to deny their authority when it is opportune for them to do so. Equally, the judicial institution will lose its public credibility if attorneys choose CT Page 14925 to assault the integrity of the process and the individuals who are charged with making the decisions which are essential to its vitality.[4]
This court has been sworn to preserve the integrity of the process and dispense whatever discipline that is necessary and appropriate to achieve that end.
The court has been requested by counsel for the Town of Monroe and Hammertown Estates, LLC to find that Attorney Burton has acted in bad faith and therefore to award them reasonable attorneys fees. Fattibenev. Kealey, supra. As stated above, the court is easily able to find bad faith by clear and convincing evidence under the standards laid down inFattibene and its predecessors. The court recognizes and appreciates the efforts of Attorneys Gregory Conte and Judah Epstein for the extent of their participation in the disciplinary phase of this proceeding. Because it was judicially inspired and the rules make no provision for the appointment of counsel to assist the court in its inquiry, it was immensely helpful to the court to have skilled attorneys who could and did engage in direct and cross direct examination of witnesses in a way that guided the court's inquiry and analysis. The court commends counsel for giving freely and liberally of their time with no expectation of remuneration. They clearly recognized a sense of duty as sworn officers of the court to defend the integrity of our system. Nevertheless, in the circumstances of this case the court does not believe that an award of attorneys fees is appropriate.
The court hereby orders that Nancy Burton be disbarred from the practice of law in this state and that she be prohibited from applying for readmission for a period of five years. Any application for readmission shall comply with the provisions of Practice Book § 2-53 and in addition shall comply with the following:
 1. Successful completion of a course in Connecticut civil practice and procedure at an accredited law school.
 2. Successful completion of a course in professional responsibility and legal/ethics at an accredited law school.
 3. Pass the multi-state examination in professional responsibility administered under the auspices of the Connecticut Bar Examining Committee.
 4. Demonstrate to the satisfaction of the reinstatement panel appointed pursuant to Practice Book § 2-53 that the applicant has achieved such a degree of rehabilitation as to encourage a belief that (a) she will conduct her professional life with due respect for the Connecticut judiciary and the judicial process which she has been sworn to uphold, CT Page 14926 (b) she is prepared to accept responsibility for her actions and will refrain from blaming judges and others for any adverse result which she may suffer in a particular case, (c) she will be truthful in all of her dealings with the court.
The court is now required to appoint an attorney pursuant to Practice Book § 2-64. The court is sensitive to the enormous responsibility which such an appointment will place upon the attorney. Moreover, drawing from Attorney Burton's past behavioral patterns it is likely that acceptance of such an appointment will trigger a lawsuit against the attorney. For these reasons the court believes that no attorney appointment should be made until the attorney whom the court solicits for the position has had an opportunity to assess fully the risks and responsibilities of the undertaking by having the benefit of the court's opinion in this phase of the proceedings. Any delay associated with a deferral of appointment will have no effect on the ends of justice because of the certainty of further judicial review.
Practice Book § 61-11(b) provides that there shall be no automatic stay in actions concerning attorneys pursuant to Chapter 2 of the rules. Accordingly, pursuant to Practice Book § 61-12 the court orders that proceedings to enforce or carry out the order of disbarment be stayed until a.) an attorney has accepted appointment pursuant to § 2-64 and, b.) the final determination of the cause.
By The Court,
Mottolese, Judge