[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION FOR SANCTIONS
The defendant filed a motion for sanctions dated December 11, 2001, seeking attorney's fees and costs for the plaintiff's failure to provide a financial affidavit in compliance with Practice Book § 25-30 and other subpoenaed motions for a scheduled hearing on November 30, 2001. The motion further alleges that false and inaccurate statements were made on the record. Subsequently, the plaintiff filed two motions: a Motion For Sanctions For Failure to Comply with Discovery filed December 13, 2001, and a Motion for Contempt and Sanctions filed December 18, 2001, claiming that the defendant has failed to file a financial affidavit in compliance with Practice Book § 25-30, has failed to respond to discovery and has violated the automatic orders by selling a van and Red Skelton prints. On December 18, 2001, the court heard the motions for sanctions. It did not hear the motion for contempt or the motion for sanctions related to discovery.
The court orders both parties to comply with Practice Book § 25-30
by filing and serving updated financial affidavits at least five days prior to the next hearing date on the alimony pendente lite matter. Further, the defendant is to comply with discovery five days prior to the hearing date. The plaintiff is ordered to produce the materials requested in the subpoena dated October 11, 2001, five days prior to the hearing date.
The court must address the plaintiff's Objection to Defendant's Motion CT Page 120 for Sanctions dated December 13, 2001 and heard by the court on December 18, 2001. That objection signed by the plaintiff's attorney contains several misleading and inaccurate statements. On page one of the objection, it states,
 Subsequently, the plaintiff's and defendant's counsel agreed to meet, in Bantam court at 9:00 a.m., the next day to exchange the financial affidavits. Defendant's counsel failed to show.
(Objection to defendants' Motion for Sanctions, December 18, 2001, [Objection], p. 1.)
The transcript of the proceedings prior to this objection show that the plaintiff's counsel stated that he met with the defendant's counsel in Bantam on that day. (Transcript November 30, 2001, p. 15).
Further, the objection characterizes the conduct of the defendant's counsel on the second page as follows:
 Attorney Mayo's confusion and late appearance, in the file, are truly exemplified by his stating, in open Court, that he had never before looked at the file, which was open in mid-March of 2001, and Attorney Mayo not appearing until May.
(Objection, p. 2.)
A review of the transcript from the November 30, 2001 hearing shows no such statement from the defendant's counsel, but instead plaintiff's counsel saying,
 MR. GARLASCO: Well, this is the first time I've looked at the court's file, Your Honor.
(Transcript November 30, 2001, p. 30.)
In addition, the objection states unequivocally, "at no time whatsoever, did Attorney Mayo file the defendant's financial affidavit." A financial affidavit dated May 18, 2001, and signed by the defendant is in the court file.
On page one in the opening paragraph of the objection, it reads
 AS STATED IN open Court, counsel, for the plaintiff and the defendant, had a mutual agreement for the CT Page 121 exchange of financial affidavits. Attorney Mayo breached this agreement UNILATERALLY changing (1) the hearing schedule; (2) the Family Relations meeting; (3) the meeting with Attorney Jordan, without the consent or prior notice to plaintiff's counsel.
(Emphasis in original) (Objection, p. 1.)
The court reviewed both the transcript from November 30, 2001 and December 18, 2001 and finds that this paragraph is without grounds to support these representations (Transcript, December 18, 2001, pp. 20-21; 24-26). It further recalls that the judge's secretary informed plaintiff's counsel that the hearing time needed to be changed due to lack of judge availability.
In addition to the foregoing, the court is disturbed by the following paragraph on page two of the objection:
 The Court's file clearly shows the sheriff's return, itemizing the plaintiff's financial affidavit (see attached). Further, the Court's file shows child support guidelines prepared with Ms. LaGanga, and then presented to Judge Cremins. Why the Court's file does not have the plaintiff's financial affidavit should be a question addressed to the family clerk.
(Emphasis added.) (Objection, p. 2.)
First of all, the court file does contain the plaintiff's financial affidavit (unsigned) that was served with the writ, summons and complaint. Moreover, the plaintiff's counsel made no claim on December 18, 2001, of misconduct by the family clerk. The following exchanges between the court and the plaintiff's counsel on December 18, 2001, show that there was no such claim:
 THE COURT: I'm going to interrupt you, Attorney Garlasco. I want to know why you made the statement why the court's file does not have the plaintiff's financial affidavit should be a question addressed to the family clerk, when it does?
MR. GARLASCO: They're all handed up here.
 THE COURT: When it does have a financial affidavit, it's just not signed.
CT Page 122
 MR. GARLASCO: Well, the one that was presented to Judge Cremins, with the proposed orders, and with the child support guideline worksheet, which is in the file, was handed up to the clerk. I — I handed that up as a package, your Honor.
 THE COURT: You remember handing the financial affidavit, with proposed orders, with the child support guidelines?
 MR. GARLASCO: Just as we do every week here, Judge. And those were done with Ms. LaGanga as a — as we do in every family case here every week that I'm here, Judge.
With regards to . . .
 THE COURT: So that's what you're talking about. You're saying that you handed something into the family clerk on a short calendar that wasn't properly filed? That's — that's what you're claiming?
MR. GARLASCO: That's — that — that —
THE COURT: On what date? What date did that happen?
 MR. GARLASCO: The court date in April where Judge Cremins issued his order, and which is attached to the guideline worksheets in the court's file, your Honor. Which also has the proposed financial orders attached to it, which Judge Cremins said he would not act on until Ms. Ostrander was here.
 THE COURT: Well, Counsel, I think what you have to do — you have to be clearer than you are, because it is very misleading to say that the court's file clearly shows the sheriff's return itemizing the plaintiff's affidavit. Further, the court's file shows child support guidelines prepared with Ms. LaGanga. And then to make that statement that implicates some kind of — suggests some wrongdoing on the family clerk's part, without any support in the file.
MR. GARLASCO: That's not what I'm implying, Judge.
THE COURT: I hope not. CT Page 123
 MR. GARLASCO: I think you understand that Judge Cremins would never accept a package without a financial affidavit attached to that.
(Transcript, December 18, 2001, pp. 9-11)
 * * * THE COURT: But, just so I'm clear, your reference to the family clerk, is what?
 MR. GARLASCO: Is simply that the package of all of those documents was handed to the clerk and then handed to Judge Cremins. In the court's file, as you your Honor can see, are the guidelines that were worked up, as well as proposed orders, all containing requests for alimony and child support pendente lite.
 THE COURT: And there's no financial affidavit, and you don't know why, because you think that the family clerk knows why?
 MR. GARLASCO: No, Judge. Between here and there, and the bench, and —
THE COURT: Okay, I think it — it's an —
 MR. GARLASCO: I'm not pointing the finger at anybody, Judge. I'm just saying that I tried very, very hard to comply with all of the formalities here, especially with Judge Cremins who is a very meticulous judge, and I believe that I brought a full package up to the clerk who then handed it up to the judge. And in the court's file, however, there's only some of that package. And in between me and the file and Judge Cremins, I don't know where that document is, because most assuredly, we —
THE COURT: You don't have it?
MR. GARLASCO: We generated that.
 THE COURT: You don't have the original financial affidavit from your client of that date?
CT Page 124
 MR. GARLASCO: No, your Honor. No, because I didn't photocopy that package. In fact, when your Honor recessed, at our last hearing, both Attorney Mayo and I, who had not examined the court's file, poured through it and we were trying to make heads or tails out of why that — Judge Cremins' order matched up with those financial documents.
 THE COURT: I want to make very clear that you are not — I want to make very clear that you are not suggesting at this point any misconduct on the part of the family clerk?
MR. GARLASCO: Absolutely not.
 THE COURT: Because that, I have to tell you, that was the inference, and it is unfortunate phrasing in a pleading by a Commissioner of the Superior Court, and I think you've got to be a little more careful in the future, Attorney Garlasco, unless, of course — unless you feel that in fact —
MR. GARLASCO: Your Honor, I'm sorry.
MR. MAYO: Your Honor, may I inquire —
MR. GARLASCO: I didn't mean to imply that, you know.
(Transcript, December 18, 2001 pp. 32-34.)
Under Practice Book § 4-2(b), a lawyer is obligated to file good faith pleadings.
 (b) The signing of any pleading, motion, objection or request shall constitute a certificate that the signer has read such document, that to the best of the signer's knowledge. information and belief there is good ground to support it. and that it is not interposed for delay. Each pleading and every other court-filed document signed by an attorney or party shall set forth the signer's telephone number and mailing address.
(Emphasis added.) Practice Book § 4-2(b); see also Rules of Professional Conduct, 3.3 ("a lawyer shall not knowingly make a false statement of material fact or law to a tribunal"). CT Page 125
Here the plaintiff's counsel filed an objection containing misinformation and misleading statements in four instances as set forth above; namely the representations regarding the defendant's counsel's failure to appear in Bantam, his failure to review the file, his failure to file the defendant's financial affidavit and his "unilateral" actions in changing hearing dates and meetings. In making such statements, plaintiff's counsel has violated Practice Book § 4-2(b) and Rule 3.3(a)(1) of the Rules of Professional Conduct.
 "The trial court has the authority to regulate the conduct of attorneys and has a duty to enforce the standards of conduct regarding attorneys." Bergeon v. Mackler, 225 Conn. 391, 397, 623 A.2d 489 (1993). The court further has the inherent power to discipline members of the bar and "to provide for the imposition of reasonable sanctions to compel the observance of its rules." (Internal quotation marks omitted.) Gionfrido v. Wharf Realty, Inc., 193 Conn. 28, 33, 474 A.2d 787 (1984), "[T]he task of determining whether sanctions should be imposed is inherently fact bound, and requires carefully circumscribed discretion to be exercised by the trial court." (Internal quotation marks omitted.) Double I Ltd. Partnership v. Plan Zoning Commission, 218 Conn. 65, 84, 588 A.2d 624 (1991).
(Emphasis in original.) Yamin v. Savarese and Schefiliti, P.C.,58 Conn. App. 171, 175 cert. denied, 254 Conn. 917 (2000); see Fattibenev. Kealey, 18 Conn. App. 344, 358-359 (1989).
A sanctions order against an attorney is "designed both to compensate the adversarial side for its expenses in defending against the bad faith litigation conduct, and to deter the offending attorney from repeating his misconduct by requiring him to make that compensation." CFM ofConnecticut, Inc. v. Chowdury, 239 Conn. 375, 402, (1996), overturned on other grounds, State v. Salmon, 250 Conn. 147, 154 (1999). In addition, General Statutes § 51-84 (b) provides that the court "may fine an attorney for transgressing its rules and orders an amount not exceeding one hundred dollars for any offense, and may suspend or displace an attorney for just cause."
As to the statement regarding the family clerk, which apparently relates to a proceeding seven or eight months ago, at best it can be characterized as confusing and ambiguous. One could reasonably infer from that statement that misconduct or inappropriate procedure was being CT Page 126 alleged. The court understands from Attorney Garlasco's representations in court that he did not intend to imply misconduct on the part of the family clerk. The court cautions Attorney Garlasco that such a statement is perilously close to a violation of the rules of professional conduct, and that he should take more care in drafting pleadings and other papers for court filing.
In addition to the orders entered by the court on page one of this decision, the plaintiff's counsel is ordered to pay the defendant attorney's fees in the amount of $500 within thirty days of this order. Further, pursuant to General Statutes § 51-84 (b), the court imposes a fine of $100 on plaintiff's counsel.
DiPentima, J.