## CFM OF CONNECTICUT, INC. *v.* TAUFIQUL CHOWDHURY ET AL.
### (15334)

Borden, Norcott, Katz, Palmer and Peters, Js.

Argued October 1—officially released December 3, 1996

*John Timbers*, for the appellant (plaintiff).

*Karen Keefe Clark*, with whom, on the brief, were *Frank G. Usseglio* and *Irene E. Magish*, for the appellee (named defendant).

BORDEN, J. The dispositive issue of this certified appeal is whether a definite, unappealed sanctions order by a trial judge, addressed to an attorney and based on the attorney's bad faith pleading, is a final judgment for purposes of res judicata and, therefore, precludes a subsequent trial judge in the same case from vacating that order. Following our grant of certification to appeal, the sanctioned attorney, John Timbers, appealed[1] from the judgment of the Appellate Court.

---

[1] Although Timbers purports to present this appeal on behalf of both himself and the plaintiff, CFM of Connecticut, Inc., as we explain in part I

The Appellate Court reversed the judgment of the trial court, *Holzberg, J.*, vacating the sanctions order that the court, *Susco, J.*, had imposed earlier in the course of the trial proceedings.[2] *CFM of Connecticut, Inc.* v. *Chowdhury*, 38 Conn. App. 745, 662 A.2d 1340 (1995). We conclude that Judge Susco's sanctions order was a final judgment for purposes of res judicata and, therefore, that Judge Holzberg improperly vacated it. Accordingly, we affirm the judgment of the Appellate Court.

Judge Holzberg aptly described the case as a "legal quagmire" out of which has grown "a tangled thicket of motions, claims and counterclaims." The following are the pertinent facts and procedural history, gleaned from a record that includes seven thick manila trial court folders.

The plaintiff is CFM of Connecticut, Inc. (CFM). The defendants are Taufiqul Chowdhury, 5 C's Corporation (5 C's), a partnership known as 294 Farmington Realty (294 Farmington) whose trade name is Sielev Associates (Sielev), and Barry L. Siegal. Chowdhury owns the stock of 5 C's, and Siegal is a partner in 294 Farmington. CFM is in the business of franchising mini-marts under the name of Express Marts. In November, 1988, CFM entered into a franchise agreement with Chowdhury and 5 C's for the operation of an Express Mart at 302

of this opinion, we conclude that only Timbers' appeal from the judgment of the Appellate Court is properly before us.

[2] We granted certification limited to the following issue: "Under the circumstances of this case, did the Appellate Court properly conclude that, on March 18, 1993, the trial court, *Holzberg, J.*, lacked jurisdiction to vacate the contempt order of the trial court, *Susco, J.*, dated August 31, 1990?" *CFM of Connecticut, Inc.* v. *Chowdhury*, 235 Conn. 933, 667 A.2d 1270 (1995). As we explain in part II of this opinion, this question is inaccurately phrased in two respects. First, under our view of the case, the flaw in Judge Holzberg's judgment is not jurisdictional. Second, Judge Susco's order was not an order of contempt, but rather, was a sanctions order for bad faith pleading. We nonetheless affirm the judgment of the Appellate Court, albeit on grounds different from those on which it relied.

Farmington Avenue, Hartford, which was owned by 294 Farmington. 294 Farmington had leased the property to CFM, which made it available to Chowdhury and 5 C's under the franchise agreement.

In April, 1989, 294 Farmington brought a summary process action against CFM for nonpayment of rent. CFM was defaulted for failure to appear for trial in that action, and that judgment was sustained on appeal.

In August, 1989, CFM, represented by Timbers, brought this action in the Hartford judicial district claiming that Chowdhury had breached the franchise agreement, and that Chowdhury, 294 Farmington and Siegal had unlawfully conspired to evict CFM. In connection with this action, CFM filed a motion for a preliminary injunction and a motion for a prejudgment remedy, which were heard before Judge Susco on February 28, March 1 and 2, May 10, 11 and 29, 1990, with additional hearing dates scheduled for August 9, 16 and 17, 1990. After the fourth hearing day, CFM filed a motion to add two other parties as plaintiffs, namely, TM of Connecticut, Inc. (TM), and Total Food Mart Corporation, and also filed a request to amend its complaint by adding six additional counts. This motion and request were heard before Judge Susco on July 17, and a decision on them was pending when, on August 3, CFM filed a motion for recusal or disqualification of Judge Susco for alleged bias, and for a mistrial on CFM's pending motions for a preliminary injunction and a prejudgment remedy.

The filing of this motion necessitated the postponement of the scheduled August 9 hearing before Judge Susco.[3] On August 13, however, CFM, TM and Total

---

[3] CFM's motion for recusal, disqualification and a mistrial was heard by Judge Miano on August 10, 1990. Judge Miano denied CFM's motion on August 31 and, in response to Chowdhury's request in opposition to the motion, awarded Chowdhury attorney's fees in the amount of $3251 for bad faith pleading, to be paid by December 31, 1990. After unsuccessfully seeking

Food Mart Corporation served Chowdhury and 5 C's with a complaint, which was signed by Timbers, and was returnable to the Windham judicial district, which alleged the same claims that were pending before Judge Susco as well as additional claims that CFM was seeking to add by its request to revise. Thereafter, on the morning of August 16, the last day scheduled for hearings before Judge Susco, CFM withdrew its motions for a preliminary injunction and for a prejudgment remedy, its request to revise, and its motion to join additional plaintiffs. In response, Chowdhury and 5 C's filed the motion that resulted in the ruling of Judge Susco that is involved in this appeal. On August 17, 1990, Chowdhury and 5 C's objected to the withdrawal by CFM of its motions for a preliminary injunction and for a prejudgment remedy. They also moved for an assessment against Timbers of attorney's fees incurred by them in connection with all of CFM's withdrawn motions and requests.

In support of this motion, Chowdhury and 5 C's alleged that the withdrawal was a "blatant, last ditch attempt [by CFM] to forum shop in order to relitigate [in the Windham judicial district] its motion for a prelim-

a stay of Judge Miano's order from Judge Hennessey, CFM, on December 26, 1990, moved to reargue and vacate Judge Miano's order on the grounds, inter alia, that no hearing had been held on the imposition of such sanctions, as required by *Fattibene* v. *Kealey*, 18 Conn. App. 344, 558 A.2d 677 (1989), and that payment should not have been ordered until CFM had had an opportunity to appeal such an imposition. Judge Miano granted CFM's motion to reargue, and on April 15, 16 and 17, 1991, reheard the issue of the imposition of attorney's fees as a sanction. By memorandum of decision dated June 13, 1991, Judge Miano specifically found that Timbers, as CFM's counsel, had "unreasonably extended court proceedings, engaged in the multiplication of proceedings and actions, engaged in proceedings in order to avoid or circumvent an anticipated adverse ruling by a court, engaged in forum shopping and disqualification of a trial court without color of claim." Judge Miano also specifically found that Timbers' conduct amounted to bad faith and abusive litigation practices. Accordingly, Judge Miano imposed the sanction of attorney's fees against Timbers. Judge Miano's order is not involved in this appeal.

inary injunction." They also alleged that Timbers had conceded at the hearing on the motion for recusal before Judge Miano that CFM would probably lose the motion for a preliminary injunction, that Timbers first had attempted to forestall that result by moving to recuse Judge Susco, and that after the recusal effort had failed he had instituted the second action in the Windham judicial district and had withdrawn the motions in the Hartford judicial district in order to avoid an adverse ruling on the merits that might have had res judicata effect. Chowdhury and 5 C's alleged further that Timbers had withdrawn the motions to join additional parties and to revise the complaint in order to avoid the dismissal of the action in the Windham judicial district on the ground of the prior pending action doctrine. They also alleged that it was an abuse of the legal system to "tie up the judicial system for six days of hearings but when it appears that an adverse ruling is likely, withdraw the motion and institute an identical action in another court before another judge in an effort to obtain a better result." They further alleged that they had spent tens of thousands of dollars in attorney's fees defending against the motions, that they should not be required now to spend even more money to defend against substantially identical motions before a different judge, and that they were entitled to a determination on the merits of the motions.[4]

In response to this motion, CFM filed, on August 24, a "cross motion for sanctions and other relief," and on August 30, an amended version of the same motion. In the amended motion, CFM moved for sanctions against Chowdhury and 5 C's on the ground that their motion for sanctions had been made in bad faith, without color, and for reasons of harassment. CFM also represented

---

[4] In addition, as part of the same motion, Chowdhury and 5 C's moved to disqualify Timbers from continuing to represent CFM on grounds involving certain affidavits that Timbers had filed.

that, if the court sustained any of the objections to the withdrawal of the motions for a preliminary injunction and a prejudgment remedy, CFM planned to resubmit its motions to add additional parties and to amend its complaint. CFM then moved for an order postponing any hearing on those motions until after those resubmitted motions had been heard and decided.[5]

Thereafter, Judge Susco ruled on these motions and cross motions. She granted Chowdhury's motion for sanctions and assessed $10,000 in attorney's fees against both CFM and Timbers.[6] In addition, Judge Susco overruled the objection to the withdrawal of CFM's motions and denied CFM's cross motion for sanctions. On September 11, 1990, the clerk sent to all counsel a notice of Judge Susco's rulings. On December 18, 1990, Chowdhury requested that Judge Susco articulate her earlier ruling by specifying the date on which the $10,000 was to be paid and, on December 31, 1990, Judge Susco ordered the fees to be paid by February 28, 1991. Neither CFM nor Timbers took any action to challenge the propriety of these rulings, either by way of appeal or by way of a motion to reconsider or to vacate.[7]

Meanwhile, further legal maneuvering was taking place. In February, 1990, James F. Schmidt and Janice Schmidt, who owned all of the 1000 outstanding shares

[5] As far as we can see, this representation and motion sought to postpone the completion of the hearing and the decision on the issues that the parties had already spent six days litigating before Judge Susco.

[6] Judge Susco also denied without prejudice the motion to disqualify Timbers from continuing to represent CFM. See footnote 4. Although Judge Susco's sanctions order was in favor of both Chowdhury and 5 C's, the parties and the Appellate Court have treated it as benefiting only Chowdhury. We, therefore, do the same, and consider only Chowdhury as the appellee in this appeal.

[7] By contrast, however, on December 26, 1990, CFM moved for reargument and vacating of Judge Miano's orders awarding sanctions against CFM and Timbers and claimed in support of that motion that no hearing had been held prior to the sanctions order. See footnote 3.

of stock of CFM, declared bankruptcy, and in October, 1990, CFM was dissolved as a corporation by the secretary of the state for failure to file a biennial report. As a result, CFM was prohibited from engaging in any corporate affairs beyond those necessary to its windup. At a bankruptcy auction on July 24, 1991, the trustee in bankruptcy sold the Schmidts' 1000 shares of stock in CFM to 294 Farmington, which thereupon appointed Siegal as the sole director of CFM. On July 25, 1991, CFM instructed Timbers to withdraw all pending litigation, including this action. When Timbers refused to do so, CFM retained the law firm of Tarlow, Levy & Droney (Tarlow), which, on July 29, 1991, filed an appearance in this action in lieu of the appearance of Timbers, as well as a withdrawal of the case.

Although the Schmidts had owned all of the issued shares of CFM, they had not owned all of the authorized shares. In fact, there were 4000 additional authorized shares. On July 23, 1991, one day before the bankruptcy auction[8] and pursuant to a strategy devised by Timbers, CFM had issued the additional 4000 shares to Donald Feigenbaum and Roger Cote, who were also the majority shareholders of TM.[9]

Thus, there was a dispute over the ownership and control of CFM between, on the one hand, 294 Farmington and Siegal, who were represented by Tarlow, and, on the other hand, Feigenbaum, Cote, and TM, who were represented by Timbers. Consequently, on August 2, 1991, Timbers filed a motion to strike both

---

[8] The record does not disclose whether the bankruptcy trustee knew of the additional 4000 authorized shares.

[9] In 1989, Feigenbaum, Cote and the Schmidts had formed a joint venture, namely, TM, which took by assignment CFM's interest in its franchise agreements and trademark. Thus, although CFM had been the nominal franchisor of the Express Mart located on 294 Farmington's property, the beneficial owners of the franchise were TM and its shareholders, namely, Feigenbaum, Cote and the Schmidts. Timbers was counsel to both CFM and TM during this entire period.

the appearance of Tarlow and its withdrawal of this action. Among the reasons Timbers advanced for this motion were that Feigenbaum and Cote, rather than 294 Farmington, owned the controlling interest in CFM, and that CFM was not authorized to withdraw the case because it already had assigned the cause of action to TM on July 23.

Thereafter, on January 6, 1992, Tarlow, on behalf of 294 Farmington, filed an "Application for Quo Warranto and a Determination of Interests," requesting a ruling that 294 Farmington was the sole shareholder of CFM. On January 15, 1992, Timbers withdrew his motion to strike the appearance and withdrawal of action that Tarlow had filed. On January 27, 1992, Chowdhury moved to hold Timbers in contempt for failure to pay Chowdhury both the $3251 in attorney's fees ordered by Judge Miano, and the $10,000 in attorney's fees ordered by Judge Susco. Both the application for quo warranto and the motion for contempt came before Judge Holzberg for hearing in July, 1992.

At this hearing, Timbers claimed that because Tarlow had withdrawn the case and he was no longer objecting to that withdrawal, there was no longer any case before the court. He argued, therefore, that in the absence of an antecedent motion to restore the case to the docket, the court had no jurisdiction to take further action in the case, with respect to either the application for quo warranto or the motion for contempt.[10] Chowdhury argued that principles of res judicata applied to Judge Susco's order.

With respect to the application for quo warranto, Judge Holzberg noted that Timbers refused "to concede

---

[10] We also note that despite Timbers' representation to us during oral argument that the lack of a hearing before Judge Susco was argued before Judge Holzberg, we can find no support for such a representation, either in the transcript or in CFM's and Timbers' trial brief filed in connection with that proceeding.

that the stock of CFM is now owned by 294 Farmington or that [Tarlow] in fact represents CFM. Attorney Timbers has candidly acknowledged that if [Tarlow's] withdrawal is permitted to stand, without any finding by the court that it is the duly authorized counsel for plaintiff, he intends to reinstate this action either in the name of CFM or another entity to which CFM claims to have assigned the interests in the litigation."

Judge Holzberg then observed: "The court, therefore, is faced with the curious situation of both parties agreeing that the withdrawal filed by [Tarlow] on behalf of CFM is valid, but disagreeing as to who owns the stock of CFM and who is its duly authorized attorney. Although superficially this would appear to render the case moot, the court will determine who is the rightful owner of the stock of CFM and, therefore, whose appearance should be recognized by the court because of its conclusion that all other issues in this case are subordinate to and dependent on a resolution of the question of which person or persons own the stock of CFM and which counsel represents CFM. Failure to answer those questions will invite this litigation to proceed in perpetuo."

Relying on the court's inherent power to take all steps that are reasonably necessary for the administration of justice, including the powers to fashion remedies to enforce its judgments and to impose sanctions in order to enforce its orders, Judge Holzberg proceeded to adjudicate the matters before him. With respect to 294 Farmington's application for quo warranto, he determined that (1) 294 Farmington was the sole shareholder of CFM, (2) the appearance and withdrawal filed by Tarlow were valid, and (3) the action was no longer pending and was deemed terminated by virtue of the withdrawal filed on July 29, 1991, by Tarlow. He also determined that the purported assignment of the cause of action

from CFM to TM and assignment of license from CFM to Total Food Mart Corporation were invalid.

With respect to Chowdhury's motion for contempt, Judge Holzberg made a bifurcated determination. Regarding Judge Miano's order, he ordered Timbers to appear before him for an evidentiary hearing to show cause why he should not be held in contempt for refusing to comply. Regarding Judge Susco's order, Judge Holzberg determined that, because no hearing had been held in support of the motion for sanctions, the order should be vacated.[11]

Timbers, purporting to act on behalf of CFM and, implicitly, on his own behalf,[12] filed an appeal in the

[11] The record is unclear regarding (1) the precise date of Judge Susco's sanctions order, and (2) whether Judge Susco had held a hearing on Chowdhury's motion for sanctions. With respect to the date, the record discloses both a "Revised Judgment," dated August 31, 1990, but filed on September 9, 1990, and a notice from the clerk to the parties and counsel, dated September 11, 1990. With respect to the hearing, although Judge Holzberg stated in his decision that Judge Susco had not held such a hearing, Judge Susco's August 31, 1990 revised judgment, after referring to the motion for sanctions, states: "On August 31, 1990, this court, *having heard the parties*, finds that Chowdhury's motion for sanctions should be and the same is granted. CFM and Attorney Timbers personally are ordered to pay attorneys fees of $10,000 to Chowdhury." (Emphasis added.)

Moreover, insofar as the record indicates, at no time did either CFM or Timbers request Judge Holzberg to vacate Judge Susco's order for reasons having to do with the merits—either procedural or substantive—of that order. Rather, they objected to the motion for contempt on the ground that the withdrawal of the action by CFM had deprived Judge Holzberg of jurisdiction to act on the motion for contempt, and requested, somewhat anomalously, that Judge Holzberg "vacate" Judge Susco's order on the basis of the same withdrawal. In our view, however, it is not necessary to resolve these procedural questions, because Chowdhury does not claim that Judge Holzberg's judgment was flawed for lack of a request to vacate and because we have concluded that principles of res judicata prevented Judge Holzberg from revisiting the validity of Judge Susco's order.

[12] The appeal filed by Timbers noted only CFM as the appellant and did not name himself as an appellant as well. Despite this technical defect, however, it is apparent from the preliminary statement of issues filed with the appeal that he also intended to challenge the order of Judge Miano imposing sanctions on him personally. Chowdhury has never disputed this characterization of the appeal.

Appellate Court from the judgment rendered upon Judge Holzberg's orders. In his preliminary statement of issues filed pursuant to Practice Book § 4013 (a) (1),[13] Timbers challenged those aspects of Judge Holzberg's judgment that aggrieved CFM and him personally. These were the court's conclusions regarding the ownership of the stock of 294 Farmington and the sanctions against him by Judge Miano, including whether Judge Holzberg had jurisdiction to consider Judge Miano's sanctions order following the withdrawal of the case. Chowdhury filed a cross appeal in the Appellate Court, challenging Judge Holzberg's vacating of Judge Susco's sanctions order.

The Appellate Court dismissed CFM's and Timbers' appeal "on the grounds of untimeliness pursuant to Practice Book § 4009[14] and the plaintiff's failure to comply with a nisi order issued by the court." *CFM of Connecticut, Inc.* v. *Chowdhury*, supra, 38 Conn. App. 745 n.1. Consequently, that dismissal and the appeal by CFM and Timbers are not before us. The Appellate Court, therefore, considered only Chowdhury's cross appeal challenging the vacating of Judge Susco's order by Judge Holzberg. Id., 745. The court reasoned that because Judge Susco's order was a final judgment, General Statutes § 52-212a[15] and Prac-

---

[13] Practice Book § 4013 provides in relevant part: "—Additional Papers To Be Filed By Appellant and Appellee

"(a) At the time the appellant sends a copy of the endorsed appeal form and the docket sheet to the appellate clerk, the appellant shall also send the appellate clerk an original and one copy of the following:

"(1) A preliminary statement of the issues intended for presentation on appeal. . . ."

[14] At all times pertinent to this appeal, Practice Book § 4009 provided in relevant part: "Time to Appeal

"The party appealing shall, within twenty days, except where a different period is provided by statute, from the issuance of notice of the rendition of the judgment or decision from which the appeal is taken file an appeal in the manner prescribed by Sec. 4012 . . . ."

[15] General Statutes § 52-212a provides: "Civil judgment or decree reopened or set aside within four months only. Unless otherwise provided by law and

tice Book § 326[16] were applicable, and more than four months had passed since that order, Judge Holzberg lacked jurisdiction to vacate the order. Id., 747–50. Accordingly, the Appellate Court reversed the portion of the trial court judgment vacating Judge Susco's order. This certified appeal followed. See footnote 2.

I

We first address the question of who and what are properly before us. We conclude that only the propriety of Judge Holzberg's conclusion regarding Judge Susco's order, insofar as it applies to Timbers personally rather than to CFM, is before us.

Judge Holzberg decided that 294 Farmington, and not Feigenbaum and Cote, owned CFM, and that, therefore, Tarlow, rather than Timbers, represented CFM. The propriety of those determinations was involved only in CFM'S appeal, which was ultimately dismissed, and not in Chowdhury's cross appeal. Therefore, those determinations must stand for purposes of this appeal to this

---

except in such cases in which the court has continuing jurisdiction, a civil judgment or decree rendered in the superior court may not be opened or set aside unless a motion to open or set aside is filed within four months following the date on which it was rendered or passed. The continuing jurisdiction conferred on the court in preadoptive proceedings pursuant to subsection (i) of section 17a-112 does not confer continuing jurisdiction on the court for purposes of reopening a judgment terminating parental rights. The parties may waive the provisions of this section or otherwise submit to the jurisdiction of the court, provided the filing of an amended petition for termination of parental rights does not constitute a waiver of the provisions of this section or a submission to the jurisdiction of the court to reopen a judgment terminating parental rights."

[16] At all times pertinent to this appeal, Practice Book § 326 provided in relevant part: "Setting Aside or Opening Judgments

"Unless otherwise provided by law and except in such cases in which the court has continuing jurisdiction, any civil judgment or decree rendered in the superior court may not be opened or set aside unless a motion to open or set aside is filed within four months succeeding the date on which it was rendered or passed. The parties may waive the provisions of this paragraph or otherwise submit to the jurisdiction of the court. . . ."

court. That necessarily means that Timbers has no right to represent CFM in this appeal to this court because he has been conclusively determined not to represent CFM. Thus, although his brief purports to present this appeal on behalf of both CFM and Timbers personally, his standing here, as Chowdhury properly points out, is limited to his personal interest in Judge Susco's order.

We consider this appeal, therefore, as involving only a sanctions order issued against an attorney by one trial judge that was subsequently vacated by another trial judge. We turn next to the merits of Timbers' appeal from the judgment of the Appellate Court.

## II

Timbers makes three claims: (1) once the case was withdrawn, the trial court had no jurisdiction to take further action in the case, including considering Chowdhury's motion for contempt;[17] (2) in the alternative, § 52-212a does not apply to Judge Susco's order because it was not an appealable final judgment; and (3) if § 52-212a applies, Judge Holzberg had jurisdiction to vacate Judge Susco's order because the case comes within the exceptions to § 52-212a for cases in which the court has continuing jurisdiction and in which a party submits to the jurisdiction of the court. We disagree. We conclude that: (1) the withdrawal filed by Tarlow did not deprive the trial court of jurisdiction to consider Chowdhury's motion for contempt directed against Timbers; and (2) principles of res judicata precluded Judge Holzberg from reexamining the propriety of Judge Susco's sanctions order.[18]

---

[17] In this connection, Timbers also claims—curiously, but candidly—that this withdrawal also deprived the trial court of jurisdiction to vacate Judge Susco's sanctions order.

[18] These conclusions render it unnecessary to consider the applicability of § 52-212a or of any exceptions to its applicability.

A

We first consider Timbers' jurisdictional challenge. Relying on *Lusas* v. *St. Patrick's Roman Catholic Church Corp.*, 123 Conn. 166, 193 A. 204 (1937), he argues that Judge Holzberg had no jurisdiction over the parties to act further in the case once Tarlow had filed a withdrawal of the case in July, 1991. Timbers contends that, because by the time Chowdhury's motion for contempt came before Judge Holzberg in July, 1992, Timbers had withdrawn his objection to that withdrawal, and because no motion to restore the case to the docket had been filed or granted, the court had no jurisdiction. We are unpersuaded.

In *Lusas*, we considered an appeal from an order of the trial court restoring to the docket, on the motion of one party, a case that had been withdrawn jointly by both parties. Id., 167. We first addressed whether the trial court had jurisdiction over the parties to restore the case to the docket. This court stated that when a case has been voluntarily withdrawn, although the case "has not gone entirely beyond the jurisdiction of the court to act in it"; id., 170; the court is without jurisdiction to act in the case unless it has been first restored to the docket pursuant to a motion, the parties have stipulated to its restoration, or there has been a waiver, express or implied, of any objection to the court's acting in the case. Id., 170–72. We conclude that *Lusas* does not require a conclusion that Judge Holzberg lacked personal jurisdiction over Timbers to consider Chowdhury's motion for contempt.

First, to the extent that *Lusas* requires an antecedent motion to restore a case to the docket in order for the court to reassert jurisdiction over the parties before taking further action with regard to their case, we do not think the same rule should apply to the sanctions order levied against Timbers by Judge Susco. He was

not a party to the underlying action that had been withdrawn. Whatever effect the withdrawal might have had on the sanctions order insofar as that order applied to CFM—a question we need not decide in this case—the unilateral withdrawal of the case by CFM, without the consent or concurrence of Chowdhury, could not eviscerate the effect of the sanctions order between Timbers and Chowdhury.

Chowdhury was the party for whose benefit the sanctions order against Timbers operated. The withdrawal of the case by CFM could not benefit Timbers personally to the detriment of Chowdhury. A different conclusion would give too great an incentive to an attorney who has been sanctioned for bad faith pleading to avoid the sanction by withdrawing the underlying action before it is sought to be enforced.[19] Moreover, such an incentive would pose a substantial risk of a conflict of interests between the sanctioned attorney and his client: the interest of the client, even one simultaneously sanctioned as in this case, might well be to continue the litigation, while the interest of the sanctioned attorney might well be to urge withdrawal of the action in order to avoid his personal exposure to the immediate enforcement of the sanction.

---

[19] We recognize that as *Lusas* v. *St. Patrick's Roman Catholic Church Corp.*, supra, 123 Conn. 169, suggests with respect to parties to a withdrawn action, principles of finality and repose may require some time limit on when, after the underlying case has been withdrawn, a court may nonetheless continue to exert personal jurisdiction over a sanctioned attorney in order to compel him to comply with a sanctions order. We need not address that question in this case, however, because Chowdhury's motion for contempt was filed on January 27, 1992, just twelve days after Timbers withdrew his objection to Tarlow's withdrawal of the action. The earliest date on which Timbers could even arguably have considered the case to have been effectively withdrawn was the date on which he withdrew his objection to the withdrawal. Thus, even under that scenario, Timbers was promptly put on notice that Chowdhury was attempting to enforce Judge Susco's sanctions order.

Second, even if we were to assume that, under *Lusas*, Judge Holzberg was required to grant a motion to restore the case to the docket before considering the motion for contempt, we can only regard his actions as the functional equivalent of the granting of such a motion. To conclude otherwise would be to elevate form over substance.

Judge Holzberg had before him two matters. The first was the application by Tarlow for quo warranto, seeking a determination of the proper ownership of the stock of CFM. That was an issue that had already surfaced significantly in the case and that, according to Timbers' own representation, would reappear in a subsequent action that Timbers assured Judge Holzberg he intended to file. Indeed, this issue would be determinative of whether Timbers had the authority to file the subsequent action at all, and would, therefore, determine whether this incredibly prolix course of litigation would continue or cease. The second matter was Chowdhury's motion for contempt for Timbers' failure to comply with Judge Susco's and Judge Miano's sanctions orders.

It is clear from Judge Holzberg's opinion that he considered it necessary to the due administration of justice that he decide all of these issues. It is also clear from this record that, had he been formally presented with a motion to restore the case to the docket, he would have exercised his discretion to grant that motion as a precursor to his assumption of jurisdiction over the parties and Timbers in order to accomplish that necessity. He was confronted with a case that had already consumed heroic amounts of resources of the judiciary, the parties and their counsel. Although now formally withdrawn, the validity of that withdrawal depended on the resolution of the question of who represented CFM—a question that Timbers in effect promised Judge Holzberg would surface again quickly upon Timbers' contemplated new action and would, therefore, con-

sume even more such resources. Concomitant with that question and its subsidiary factual and legal issues, Judge Holzberg was presented with the question of whether to hold Timbers in contempt for failure to comply with Judge Susco's sanctions order. The conclusion is inescapable that, had a formal motion to restore to the docket been presented to Judge Holzberg, he would have granted it.

To read the record any other way would be to blink at reality. Under the unique circumstances of this case, therefore, Judge Holzberg's action on the motions that were before him must be deemed to be the equivalent of restoring the case to the docket for the purpose of exercising the court's inherent powers to enforce its orders and to provide for the due administration of justice.

Moreover, Timbers has not been prejudiced in any concrete way by this reading of the record. He had full opportunity before Judge Holzberg to object to the court's assumption of jurisdiction over him and to argue the merits of Chowdhury's attempt to enforce Judge Susco's order.

B

Timbers also claims that Judge Holzberg's judgment vacating Judge Susco's sanctions order was correct because, contrary to the Appellate Court's conclusion, General Statutes § 52-212a and Practice Book § 326; see footnotes 15 and 16; did not preclude Judge Holzberg from vacating the sanctions order. Chowdhury responds that: (1) as he argued in the Appellate Court, Judge Holzberg improperly vacated Judge Susco's order under principles of res judicata; and (2) in the alternative, the Appellate Court was correct in its analysis of the case under § 52-212a and § 326. We need not consider his second claim, however, because we agree with Chowdhury that the propriety of Judge Holzberg's judg-

ment is more appropriately analyzed under principles of res judicata. Applying those principles, we conclude that Judge Susco's sanctions order was a final judgment for purposes of res judicata, and that, therefore, Judge Holzberg improperly vacated it.

1

We first consider the nature of Judge Susco's order. That order was entered under the authority of *Fattibene* v. *Kealey*, 18 Conn. App. 344, 558 A.2d 677 (1989). We agree with the conclusion of the Appellate Court in *Fattibene*, which Timbers does not challenge, that, subject to certain limitations, a trial court in this state "has the inherent authority to impose sanctions against an attorney and his client for a course of claimed dilatory, bad faith and harassing litigation conduct," even in the absence of a specific rule or order of the court that is claimed to have been violated. Id., 359–60. We also agree with the general principles stated by the Appellate Court in *Fattibene*.

As a procedural matter, before imposing any such sanctions, the court must afford the sanctioned party or attorney "a proper hearing on the . . . motion" for sanctions. Id., 352. There must be "fair notice and an opportunity for a hearing on the record." (Internal quotation marks omitted.) Id., 353. This limitation, like the substantive limitations stated in the following discussion, is "particularly appropriate with respect to a claim of bad faith or frivolous pleading by an attorney, which implicates his professional reputation." Id.

As a substantive matter, "[t]his state follows the general rule that, except as provided by statute or in certain defined exceptional circumstances, the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser. *Alyeska Pipeline Co.* v. *Wilderness Society*, 421 U.S. 240, 247, 95 S. Ct. 1612, 44 L. Ed. 2d 141 (1975); *Ernst Steel Corporation* v.

*Reliance Ins. Co.*, 13 Conn. App. 253, 261, 536 A.2d 969 (1988). That rule does not apply, however, where the opposing party has acted in bad faith. *Roadway Express, Inc.* v. *Piper*, [447 U.S. 752, 765–66, 100 S. Ct. 2455, 65 L. Ed. 2d 488 (1980)]. It is generally accepted that the court has the inherent authority to assess attorney's fees when the losing party has acted in bad faith, vexatiously, wantonly or for oppressive reasons. Id., 766; *Dow Chemical Pacific Ltd.* v. *Rascator Maritime S.A.*, 782 F.2d 329, 344 (2d Cir. 1986). This bad faith exception applies, not only to the filing of an action, but also in the conduct of the litigation. *Roadway Express, Inc.* v. *Piper*, supra, 766, quoting *Hall* v. *Cole*, 412 U.S. 1, 15, 93 S. Ct. 1943, 36 L. Ed. 2d 702 (1973). It applies both to the party and his counsel. *Roadway Express, Inc.* v. *Piper*, supra [766]. Moreover, the trial court must make a specific finding as to whether counsel's [or a party's] conduct . . . constituted or was tantamount to bad faith, a finding that would have to precede any sanction under the court's inherent powers to impose attorney's fees for engaging in bad faith litigation practices. Id.

"We agree, furthermore, with certain principles articulated by the Second Circuit Court of Appeals in determining whether the bad faith exception applies. To ensure . . . that fear of an award of attorneys' fees against them will not deter persons with colorable claims from pursuing those claims, we have declined to uphold awards under the bad-faith exception absent both clear evidence that the challenged actions are entirely without color and [are taken] for reasons of harassment or delay or for other improper purposes . . . and a high degree of specificity in the factual findings of [the] lower courts. (Citations omitted.) *Dow Chemical Pacific Ltd.* v. *Rascator Maritime S.A.*, supra, [782 F.2d 344], quoting *Weinberger* v. *Kendrick*, 698 F.2d 61, 80 (2d Cir. 1982). Whether a claim is color-

able, for purposes of the bad-faith exception, is a matter of whether a reasonable attorney could have concluded that facts supporting the claim *might be established*, not whether such facts *had been established*. (Emphasis in original.) *Dow Chemical Pacific Ltd.* v. *Rascator Maritime S.A.*, supra, 344, quoting *Nemeroff* v. *Abelson*, 620 F.2d 339, 348 (2d Cir. 1980). To determine whether the bad faith exception applies, the court must assess whether there has been substantive bad faith as exhibited by, for example, a party's use of oppressive tactics or its wilful violations of court orders; [t]he appropriate focus for the court . . . is the conduct of the party in instigating or maintaining the litigation. *Dow Chemical Pacific Ltd.* v. *Rascator Maritime S.A.*, supra, 345. Cf. *Eastway Const. Corp.* v. *City of New York*, 762 F.2d 243, 253 (2d Cir. 1985) (F. R. Civ. P. 11 has more expansive standard for imposition of sanctions than court's inherent powers)." (Internal quotation marks omitted.) *Fattibene* v. *Kealey*, supra, 18 Conn. App. 360–61.

Had Timbers sought to appeal from Judge Susco's order or, as he did with respect to Judge Miano's order, had he challenged it by further trial court proceedings; see footnote 3; he could have argued that the order was flawed for failure to observe these procedural and substantive limitations. The fact that a prior judicial determination may be flawed, however, is ordinarily insufficient, in and of itself, to overcome a claim that otherwise applicable principles of res judicata preclude it from being collaterally attacked. See *Gennarini Construction Co.* v. *Messina Painting & Decorating Co.*, 15 Conn. App. 504, 512, 545 A.2d 579 (1988). The general rules of res judicata, although not jurisdictional in nature; see *Labbe* v. *Pension Commission*, 229 Conn. 801, 816, 643 A.2d 1268 (1994); "are applicable to a valid . . . and final . . . judgment, even if it is erroneous and subject to reversal. If the judgment is erroneous, the unsuccessful party's remedy is to have it set aside or reversed in the original proceedings. Such a remedy

may be sought by a motion for a new trial or other relief in the court that rendered the judgment, or by an appeal or other proceedings for review of the judgment in an appellate court." 1 Restatement (Second), Judgments § 17, comment (d) (1982). We proceed, therefore, to consideration of whether Judge Susco's sanctions order was a final judgment[20] for purposes of res judicata.

2

Timbers and Chowdhury do not disagree about the general principles of res judicata. The term "res judicata" is often used generically to refer to the general concept of former adjudication, namely, that once a question has been finally and authoritatively decided it should not be relitigated. See, e.g., *Advest, Inc.* v. *Wachtel*, 235 Conn. 559, 565, 668 A.2d 367 (1995). Although the term "res judicata" also has a more specific meaning, which differentiates it from "issue preclusion,"[21] and although under some circumstances the rules applicable to one differ somewhat from the rules applicable to the other, both Chowdhury and Timbers rely in this appeal on principles and arguments applicable to the

---

[20] The prerequisites of a valid, as opposed to a final, judgment for purposes of res judicata involve whether the court had subject matter and personal jurisdiction and whether there had been adequate notice. See 1 Restatement (Second), supra, § 1. Timbers does not claim any flaw in Judge Susco's order on these bases.

[21] "[T]he terms res judicata and collateral estoppel refer to the concepts of claim preclusion or issue preclusion respectively. Both claim preclusion and issue preclusion express no more than the fundamental principle that once a matter has been fully and fairly litigated, and finally decided, it comes to rest. *State* v. *Ellis*, 197 Conn. 436, 465, 497 A.2d 974 (1985). Although claim preclusion and issue preclusion often appear to merge into one another in practice, analytically they are regarded as distinct. [C]laim preclusion prevents a litigant from reasserting a claim that has already been decided on the merits. . . . [I]ssue preclusion, prevents a party from relitigating an issue that has been determined in a prior suit. *Scalzo* v. *Danbury*, 224 Conn. 124, 128, 617 A.2d 440 (1992); see also *Aetna Casualty & Surety Co.* v. *Jones*, 220 Conn. 285, 303–304, 596 A.2d 414 (1991)." (Internal quotation marks omitted.) *Jackson* v. *R. G. Whipple, Inc.*, 225 Conn. 705, 712–13, 627 A.2d 374 (1993).

general concept, rather than to either particular form thereof. Moreover, neither Chowdhury nor Timbers has suggested that a different result would be reached due to the application of one form as opposed to the other. Applying these general principles, we conclude that Judge Susco's order was a final judgment for purposes of res judicata, so as to preclude a collateral attack on it by way of Judge Holzberg's judgment vacating it.

Chowdhury asserts that Judge Susco's order was a final judgment for purposes of res judicata because it fits within the standards for such a judgment. Timbers contends that it was not such a final judgment because: (1) res judicata does not operate within the same case, as opposed to a separate, subsequent action; and (2) the order "was not a final judgment ending the case in the trial court." Thus, Timbers argues, Judge Susco's order falls within the doctrine of the law of the case, rather than res judicata, and was not binding on Judge Holzberg. We agree with Chowdhury.

As Timbers' argument suggests, ordinarily the doctrine of res judicata operates to preclude the relitigation in one action of a claim or issue that has been determined in a previous, separate action. See, e.g., *Advest, Inc.* v. *Wachtel*, supra, 235 Conn. 565–66; *Jackson* v. *R. G. Whipple, Inc.*, 225 Conn. 705, 713, 627 A.2d 374 (1993). This does not mean, however, that the doctrine cannot operate within the same case.

"A judgment may be final in a res judicata sense as to a part of an action although litigation continues as to the rest. 1 Restatement (Second), [supra] § 13, comment (e)." *State* v. *Aillon*, 189 Conn. 416, 425, 456 A.2d 279, cert. denied, 464 U.S. 837, 104 S. Ct. 124, 78 L. Ed. 2d 122 (1983). In *Aillon*, we applied the doctrine to bar the relitigation of the defendant's double jeopardy claim, which had been decided adversely to him on a somewhat different theory at an earlier stage of the criminal

proceedings against him. Id., 423–29; see also *United States* v. *Ajimura*, 598 F.2d 510, 513 (9th Cir. 1979) (second pretrial claim of double jeopardy barred by adverse determination of first claim); *Gentile* v. *Ives*, 163 Conn. 281, 282–83, 303 A.2d 714 (1972) (highway commissioner may not collaterally attack, in second proceeding in same case, interest portion of judgment from which no timely appeal had been taken in first instance); *Morganti, Inc.* v. *Boehringer Ingelheim Pharmaceuticals, Inc.*, 20 Conn. App. 67, 71–73, 563 A.2d 1055 (1989) (on application to vacate arbitration award, party may not relitigate issue of arbitrability decided adversely on previous request for injunction against arbitration); *Gennarini Construction Co.* v. *Messina Painting & Decorating Co.*, supra, 15 Conn. App. 509–12 (party may not, in second proceeding in same case, relitigate question of interest and attorney's fees decided adversely at earlier stage of proceedings). In each of these cases, the second claim was barred because an appeal had intervened, or could have intervened, between the presentation of the two claims.

As these cases suggest, one of the critical factors in determining whether a judicial determination is a final judgment for purposes of res judicata is whether it is also a final judgment for purposes of appeal. Although the standards for the two forms of finality are not *necessarily* congruent; *State* v. *Aillon*, supra, 189 Conn. 425; 1 Restatement (Second), supra, § 13, comment (b); that does not mean that finality for purposes of appeal will *never* constitute finality for purposes of preclusion.

Thus, the Restatement provides that, although certain interlocutory appellate mechanisms may not provide finality for purposes of res judicata, the traditional standard of finality for purposes of appeal will generally also provide the standard of finality for purposes of preclusion. 1 Restatement (Second), supra, § 13, comment (b). Thus, for purposes of res judicata, a judgment

will ordinarily be considered final "if it is not tentative, provisional, or contingent and represents the completion of all steps in the adjudication of the claim by the court, short of any steps by way of execution or enforcement that may be consequent upon the particular kind of adjudication." Id.; see also *State* v. *Aillon*, supra, 189 Conn. 425 (appealability of first double jeopardy determination given preclusive effect because "nothing tentative or conditional" about it).

*State* v. *Curcio*, 191 Conn. 27, 463 A.2d 566 (1983), provides the standard by which to gauge the finality, for purposes of appeal, of an order like that of Judge Susco. "An otherwise interlocutory order is appealable in two circumstances: (1) where the order or action terminates a separate and distinct proceeding, or (2) where the order or action so concludes the rights of the parties that further proceedings cannot affect them." Id., 31. This doctrine "is not an exception to but simply an application of the final judgment rule embodied in [General Statutes] § 52-263."[22] *Waterbury Teachers Assn.* v. *Freedom of Information Commission*, 230 Conn. 441, 447–48, 645 A.2d 978 (1994). This standard is also appropriate to employ in this case for the determination of whether Judge Susco's order was final for purposes of res judicata because it is fully consistent with the requirement of finality for those purposes. Like the standards for finality in the realm

[22] General Statutes § 52-263 provides: "Appeals from superior court. Exceptions. Upon the trial of all matters of fact in any cause or action in the superior court, whether to the court or jury, or before any judge thereof when the jurisdiction of any action or proceeding is vested in him, if either party is aggrieved by the decision of the court or judge upon any question or questions of law arising in the trial, including the denial of a motion to set aside a verdict, he may appeal to the court having jurisdiction from the final judgment of the court or of such judge, or from the decision of the court granting a motion to set aside a verdict, except in small claims cases, which shall not be appealable, and appeals as provided in sections 8-8 and 8-9."

of res judicata, the *Curcio* standard precludes any provisional, tentative or conditional adjudication, and it focuses on the completion of all steps necessary for the adjudication of the claim, short of execution or enforcement. We can see no principled reason in this case to differentiate between the standard for finality for purposes of appeal and the standard for finality for purposes of res judicata.

Applying those principles to the facts of this case, we conclude that Judge Susco's sanctions order against Timbers was a final judgment for purposes of res judicata because it so concluded the rights of Chowdhury and Timbers that further proceedings could not affect them. The order required Timbers to pay Chowdhury $10,000 by a certain date. That order was not dependent on further proceedings in the underlying action between CFM and Chowdhury and 5 C's, because this sum was due and owing by Timbers to Chowdhury irrespective of any further proceedings in that action and irrespective of its eventual outcome. The parties to that order were Timbers and Chowdhury. Their rights, and concomitant obligations, were, with respect to Timbers, to pay the sum ordered, and, with respect to Chowdhury, to receive the payment. No further proceedings could affect those rights and obligations.[23] Moreover, whether

[23] Timbers argues that Judge Susco's order was not appealable under *Curcio* because "CFM only withdrew [its motion for a preliminary injunction] pending Judge Susco's decision of the then-pending motions (to join additional parties and objections to CFM's request to amend its complaint). It was always CFM's intention that the withdrawn Motion be completed and decided after decision of the then-pending motions. The propriety of the sanctions in the August 31, 1990 [o]rder could only be decided after the withdrawn Motion was complete and decided. Therefore, it would have been premature to take an appeal immediately after August 31, 1990, since all the facts pertinent to the sanctions mandated by that order had not been developed." This argument is without merit.

First, Timbers does not explain how some unexpressed intention on the part of a party or its attorney—purportedly to complete litigation on the withdrawn motion for preliminary injunction—can affect the legal determination of whether Judge Susco's order was a final judgment under *Curcio*.

the order was proper is a question that could not have had any conceivable effect on the ultimate outcome of the case between CFM and Chowdhury and 5 C's.[24]

Indeed, compliance with the order would have required Timbers to pay the sum ordered to Chowdhury. It is difficult to see how there can be anything less than final about the payment of money by an attorney to his client's adversary. In this respect, such an order is akin to an order of temporary alimony or child support in a marital dissolution case, which has long been considered a final judgment for purposes of appeal. See, e.g., *Bryant* v. *Bryant*, 228 Conn. 630, 636, 637 A.2d 1111 (1994).[25]

Second, this explanation is plainly inconsistent with the record in this case. Timbers, on behalf of CFM, did not express any intention to continue with his withdrawn motion for a preliminary injunction. He instead represented, in his amended cross motion for sanctions, that *if* the objections by Chowdhury and 5 C's to his withdrawal of the motion for a preliminary injunction were sustained, he intended to resubmit his motions to add additional parties and to amend his complaint, while continuing to insist on his withdrawal of the motion for preliminary injunction. Furthermore, this was simultaneous with his filing of the other action in the Windham judicial district, which raised all of the same claims that he had just spent six days litigating before Judge Susco, and clearly signaled an intent to relitigate, in a separate action, in another forum and before another judge, what the parties had just spent six days litigating before Judge Susco.

[21] The Appellate Court has properly recognized the analytical difference between a sanctions order and the case in which it is entered. In *Fattibene,* the Appellate Court originally had before it an appeal from the judgment in the underlying case and from the sanctions order that had been entered in the course of that case. See *Fattibene* v. *Kealey,* 12 Conn. App. 212, 530 A.2d 206 (1987). The court reviewed the underlying judgment but dismissed the appeal regarding the sanctions order because, lacking the amount of the fees to be paid, the sanctions order was not final. Id., 216. Thereafter, the trial court amended the order by setting an amount, and the second *Fattibene* appeal ensued. See *Fattibene* v. *Kealey,* supra, 18 Conn. App. 344.

[25] The sanctions order in this case is different, however, from an order appointing a receiver of rents in a mortgage foreclosure case, which is not a final judgment for appellate purposes. *New England Savings Bank* v. *Nicotra,* 230 Conn. 136, 139, 644 A.2d 909 (1994). Such an order is not appealable because, although it temporarily takes from the mortgagor its right to collect and use the rents while the case is being litigated, the funds are maintained in the control not of the adverse party, but of the court,

A sanctions order against an attorney is also analogous to a judgment of contempt of court, which is a final judgment for purposes of appeal. *Barbato* v. *J. & M. Corp.*, 194 Conn. 245, 250, 478 A.2d 1020 (1984); see also *Bryant* v. *Bryant*, supra, 228 Conn. 636. We regard a sanctions order against an attorney as having both a compensatory and a deterrent purpose. It is designed both to compensate the adversarial side for its expenses in defending against the bad faith litigation conduct, and to deter the offending attorney from repeating his misconduct by requiring him to make that compensation. Furthermore, a sanctions order against an attorney for misconduct in conducting litigation "implicates his professional reputation." *Fattibene* v. *Kealey*, supra, 18 Conn. App. 353. In these respects, such an order resembles both civil and criminal contempt of court.

Strong policy considerations also support the conclusion that a sanctions order is a final judgment for purposes of appeal and, therefore, res judicata. An outstanding sanctions order against an attorney in a case that has yet to run its course could very well have deleterious effects on efforts to settle the case. It carries a significant risk of placing the attorney in a potential conflict of interest in negotiating a settlement, because if the sanctions order "is linked to settlement negotiations, [the] lawyer may be placed in an ethical dilemma; his view of any settlement proposal would almost certainly be colored by its handling of the attorney['s] fee issue." *Cheng* v. *GAF Corp.*, 713 F.2d 886, 889–90 (2d Cir. 1983) (sanctions order of attorney's fees imposed on litigant's attorney appealable under collateral order doctrine).

Furthermore, although the appellate final judgment rule is based partly on the policy against piecemeal

subject at the end of the case to be allocated to their rightful owner. Id.; *Silver* v. *Kingston Realty Corp.*, 114 Conn. 349, 350–51, 158 A. 889 (1932).

appeals and the conservation of judicial resources; see *State* v. *Curcio*, supra, 191 Conn. 30; there is a counterbalancing factor in this situation. Requiring the postponement of an appeal of a sanctions order until the final judgment in the underlying action could well result in an appeal from a judgment that has nothing to do with the issues on appeal. If, for example, the client of the sanctioned attorney prevailed at trial, the client could not appeal from the judgment in its favor; thus the appeal, taken from that judgment, would involve only the question of the sanction, which would be wholly divorced from the merits of the judgment under appeal. Similarly, if the client lost in the trial court but there were no good faith grounds of appeal going to the merits of the trial court judgment, the appeal of the sanctions order would be only artificially linked to the judgment on appeal. Neither scenario commends itself as wise jurisprudence.

This discussion highlights the dividing line between the general doctrines of res judicata, relied on by Chowdhury, and the law of the case, relied on by Timbers, insofar as this case is concerned. Whereas a decision of one trial judge that is res judicata is binding on the second judge who confronts it, a decision of one trial judge that declares the law of the case is not a limitation on the power of the second judge in the case to decide otherwise, under appropriate circumstances. *Breen* v. *Phelps*, 186 Conn. 86, 99, 439 A.2d 1066 (1982). The dividing line is not, however, as Timbers argues, whether the two decisions are made in the same or different actions; the dividing line is in the nature of the first decision.

If the first decision was final, in the res judicata sense, it cannot be disregarded under the doctrine of the law of the case. If, however, the first decision was not final, but was merely interlocutory, it falls within the doctrine of the law of the case. We strongly suggested as much

in *Breen,* wherein we stated: "Where a matter has previously been ruled upon *interlocutorily,* the court in a subsequent proceeding in the case may treat that decision as the law of the case, if it is of the opinion that the issue was correctly decided, in the absence of some new or overriding circumstance." (Emphasis added.) Id.; see also *Ratner* v. *Willametz,* 9 Conn. App. 565, 573, 520 A.2d 621 (1987) (law of the case doctrine "applies only when the prior decision was interlocutory in nature," and not where decision was final for res judicata purposes). Although it may not always be easy to determine on which side of the dividing line any particular decision falls, in this case we conclude that Judge Susco's order falls on the res judicata side.

One final matter remains for consideration. The rescript of the Appellate Court in this case provided that the "portion of the judgment vacating the August 31, 1990 sanctions order is reversed." *CFM of Connecticut, Inc.* v. *Chowdhury,* supra, 38 Conn. App. 750. Judge Holzberg did not rule, on the merits of Chowdhury's motion for contempt, however, because of his ruling that Judge Susco's order was invalid. The Appellate Court's rescript, although correct insofar as it went, was incomplete because it did not remand the case to the trial court for further proceedings on Chowdhury's motion to hold Timbers in contempt of court. We, therefore, supply that omission.

The judgment of the Appellate Court is affirmed and the case is remanded to that court with direction to remand it to the trial court for further proceedings on Chowdhury's motion for contempt of court.

In this opinion the other justices concurred.