## ALAN MARIS *v.* PAMELA JO MCGRATH
(AC 18119)

Foti, Landau and Daly, Js.

Argued February 24—officially released June 13, 2000

*Thomas M. DeLillo*, with whom, on the brief, was *James E. Mattern*, for the appellant (plaintiff).

*Jeremiah Donovan*, for the appellee (defendant).

*Opinion*

LANDAU, J. The plaintiff, Alan Maris, appeals from the judgment rendered by the trial court in favor of the defendant, Pamela Jo McGrath, following a trial to the court. On appeal, the plaintiff claims that the court improperly (1) awarded attorney's fees to the defendant under the circumstances of this case and (2) exercised its discretion by rejecting the plaintiff's claim of unjust enrichment.

The following facts and procedural history are necessary for the resolution of this appeal. The plaintiff brought the present action against the defendant, his former girlfriend, claiming that moneys he deposited into their joint credit union account and expended to remodel her home while they were living there together were loans. The operative complaint alleged in count one, a breach of contract; in count two, unjust enrichment; in count three, replevin; and in count four, a constructive trust. The defendant filed an answer, special defenses and a counterclaim alleging in count one, a breach of contract; in count two, trespass; and in count three, theft.[1]

In a thoughtful and well reasoned memorandum of decision, the trial court found the following facts. In 1985, the defendant began working as a dental assistant at the orthodontic offices of the plaintiff and his partner, Kenneth Carlough. She eventually began dating the

---

[1] With respect to the counterclaims, the court found that the defendant had established a breach of contract but failed to prove damages. The court also found that the defendant failed to carry her burden of proof on the trespass and theft counts. The court also ruled in favor of the plaintiff on several other counts of the counterclaim.

plaintiff. After they agreed to live together, the parties worked out a financial arrangement in which the defendant transformed her individual credit union account into a joint account with the plaintiff. Both parties deposited moneys into the joint account and the defendant paid out moneys from that account to cover expenses. The parties lived two weeks a month at the defendant's home and two weeks a month at the plaintiff's home.

By the summer of 1990, the parties' relationship had caused a problem at the orthodontic offices. Carlough was uncomfortable supervising a woman who was the equivalent of his partner's wife. The plaintiff promised the defendant that if she left her employment in his orthodontic practice, he would provide for her material wants and needs for the remainder of her life.

When the relationship ended in 1992, the defendant transformed the joint account into a personal account and returned to the plaintiff $3500 from the account that belonged to him. The plaintiff claimed that all the moneys he had deposited into the joint account had been loans. Of the twenty-three checks deposited into the account, nineteen were made payable to the financial institution and four to the defendant. The plaintiff had made various notations in the memorandum section of the checks. The court found that "[t]he most significant of [the plaintiff's] notations is on exhibit [eleven], a check . . . on which [the plaintiff] wrote the word 'loan' in the memorandum section. The check was not deposited until five days after it was dated; [the defendant] denies having seen the word 'loan' on the check when she signed it. The court finds that [the plaintiff] wrote the word into the memorandum section after [the defendant] had signed the check but before [the plaintiff] had deposited it."

Taking up the issues before us in reverse order, we affirm the judgment of the trial court.[2]

I

The plaintiff claims that the trial court abused its discretion by concluding that the defendant was not unjustly enriched. "Unjust enrichment applies wherever justice requires compensation to be given for property or services rendered under a contract, and no remedy is available by an action on the contract. 5 S. Williston, Contracts (Rev. Ed.) § 1479." (Internal quotation marks omitted.) *Hartford Whalers Hockey Club* v. *Uniroyal Goodrich Tire Co.*, 231 Conn. 276, 282, 649 A.2d 518 (1994). "[L]ack of a remedy under the contract is a precondition for recovery based upon unjust enrichment." Id., 284.

"[T]he determinations of whether a particular [set of circumstances] was unjust and whether the defendant was benefited are essentially factual findings for the trial court that are subject only to a limited scope of review on appeal. *Stabenau* v. *Cairelli*, 22 Conn. App. 578, 581, 577 A.2d 1130 (1990). Those findings must stand, therefore, unless they are clearly erroneous or involve an abuse of discretion. Id. This limited scope of review is consistent with the general proposition that equitable determinations that depend on the balancing of many factors are committed to the sound discretion of the trial court. *Reynolds* v. *Ramos*, 188 Conn. 316, 321, 449 A.2d 182 (1982) . . . . *Hartford Whalers Hockey Club* v. *Uniroyal Goodrich Tire Co.*, supra, 231 Conn. 283." (Internal quotation marks omitted.) *McNeil* v. *Riccio*, 45 Conn. App. 466, 475–76, 696 A.2d 1050 (1997).

---

[2] The plaintiff did not appeal from the court's judgment as to count one, which sounded in breach of contract, count three, replevin, and count four, constructive trust.

Here, the court found that there was no contract between the parties as to the moneys deposited in the joint account and expended on the defendant's house. As the court sagely pointed out, "[m]uch of the case hinges on credibility. [The plaintiff] asserts that [the defendant] made an oral promise to repay the moneys which [the plaintiff] was depositing into their joint account and amounts which he expended on her house and that she promised that she would execute a document providing that those moneys would be paid back from the proceeds of the sale of her home whenever she should sell it. [The defendant] denies that [the plaintiff's] deposits . . . were loans.

"The defendant has offered testimony from four people who, other than his daughter, know [the plaintiff] best: the orthodontist with whom [the plaintiff] began his practice . . . his partner during most of his career . . . his former best friend . . . and the [defendant] with whom he had a long-term romantic relationship . . . . Each has testified that [the plaintiff's] character for veracity is miserable; some have testified that his reputation for veracity in the community of orthodontists is miserable. . . . The court finds that their shared view that [the plaintiff] cannot be trusted is compelling evidence indeed. The plaintiff himself has offered no evidence to contradict this character evidence.

"The plaintiff seeks to blunt the force of this compelling testimony by pointing out that each of the witnesses has been involved in financial disputes with him . . . . That is, the plaintiff claims that these witnesses described him as untrustworthy as a result of a bias against him. These people have spent years suffering from [the plaintiff's] duplicity; they do not trust him; their ill feeling toward [the plaintiff] is not based on bias, but rather on the very fact about which they testified: they bear ill will toward [the plaintiff] because he cannot be trusted."

The court further found that the plaintiff's testimony was contradicted on a number of points, sometimes by his own words. The court accepted the testimony of the plaintiff's accountant that the plaintiff had a practice of keeping careful records and documenting transactions. The court therefore found that the plaintiff "was being untruthful when he testified that he and [the defendant] agreed that the amounts of money that he was depositing into their joint checking account were loans and that they simply never got around to producing any written loan document."

"[T]he trial court, as trier of fact, determined who and what to believe and the weight to be accorded the evidence. The sifting and weighing of evidence is peculiarly the function of the trier. [N]othing in our law is more elementary than that the trier is the final judge of the credibility of witnesses and of the weight to be accorded to their testimony. . . . The trier is free to accept or reject, in whole or in part, the testimony offered by either party. . . . *Cook* v. *Bieluch*, 32 Conn. App. 537, 549–50, 629 A.2d 1175, cert. denied, 228 Conn. 910, 635 A.2d 1229 (1993). . . . *Baretta* v. *T & T Structural, Inc.*, 42 Conn. App. 522, 527, 681 A.2d 359 (1996)." (Internal quotation marks omitted.) *Shearn* v. *Shearn*, 50 Conn. App. 225, 231, 717 A.2d 793 (1998). We have constantly held to the rule that we will not judge the credibility of witnesses or substitute our judgment for that of the trial court. We fail to see a reason why we should do so here.

II

In his remaining claim, the plaintiff asserts that the court improperly awarded attorney's fees under the circumstances of this case. He first points out, quite appropriately, that Connecticut follows the general rule of law known as the American rule, under which attorney's fees and ordinary expenses and burdens of litiga-

tion are not awarded to successful parties unless there is a contractual or statutory exception. See *Chrysler Corp.* v. *Maiocco*, 209 Conn. 579, 590, 552 A.2d 1207 (1989). The general rule that prevents a party from recovering attorney's fees does not apply, however, to situations in which the opposing party has acted in bad faith, vexatiously, wantonly or for oppressive reasons. *CFM of Connecticut, Inc.* v. *Chowdhury*, 239 Conn. 375, 394, 685 A.2d 1108 (1996), overruled in part on other grounds, *State* v. *Salmon*, 250 Conn. 147, 155–56, 735 A.2d 333 (1999). "[The American] rule does not apply, however, where the opposing party has acted in bad faith. *Roadway Express, Inc.* v. *Piper*, [447 U.S. 752, 765–66, 100 S. Ct. 2455, 65 L. Ed. 2d 488 (1980)]. It is generally accepted that the court has the inherent authority to assess attorney's fees when the losing party has acted in bad faith, vexatiously, wantonly or for oppressive reasons. Id., 766; *Dow Chemical Pacific Ltd.* v. *Rascator Maritime S.A.*, 782 F.2d 329, 344 (2d Cir. 1986). This bad faith exception applies, not only to the filing of an action, but also in the conduct of the litigation. *Roadway Express, Inc.* v. *Piper*, supra, 766, quoting *Hall* v. *Cole*, 412 U.S. 1, 15, 93 S. Ct. 1943, 36 L. Ed. 2d 702 (1973). It applies both to the party and his counsel. *Roadway Express, Inc.* v. *Piper*, supra [766]. Moreover, the trial court must make a specific finding as to whether counsel's [or a party's] conduct . . . constituted or was tantamount to bad faith . . . ." (Internal quotation marks omitted.) *CFM of Connecticut, Inc.* v. *Chowdhury*, supra, 394.

Although *Chowdhury* involved an appeal by an attorney against whom sanctions had been imposed for bad faith pleadings, the test enunciated in that case as to whether a claim is colorable is instructive for purposes of the present appeal. The test can be couched in terms to measure the conduct of a party as well as an attorney. A claim is colorable, for purposes of the bad faith excep-

tion to the American rule, if a reasonable person, given his or her first hand knowledge of the underlying matter, could have concluded that the facts supporting the claim might be established. See id., 394–95.

In its initial memorandum of decision, the trial court stated that "the court finds [that attorney's fees] should be awarded to the defendant for defending a case which the court finds to be totally without merit." The court then stated that it would "entertain a motion to determine the amount of attorney's fees to be awarded to the defendant."

It is clear to this court that the trial court awarded the defendant attorney's fees because the plaintiff's case lacked merit. In a supplemental memorandum of decision on the defendant's motion for attorney's fees, the court stated in part: "The defendant has filed a motion to recover attorney's fees based on her claim that the plaintiff's action was brought in bad faith in a retaliatory manner designed to cause misery to a woman with whom he had previously been involved. . . . [T]he court heard oral argument on the issue and counsel were given an opportunity to file briefs. The amount filed was $15,218.86. . . . The plaintiff claims that his action was colorable and that the defendant failed to prove that the claims were brought for improper purpose. On the contrary, the court in its decision found that the plaintiff's claims were totally false and that his testimony was not truthful. This was not a matter of two good faith litigants as claimed by plaintiff. Accordingly, the court must agree with the defendant that the facts in this case require an award of attorney's fees."

In light of the court's findings of fact, it is apparent that a reasonable person could not have come to the conclusion that the plaintiff could prevail. The plaintiff knew that the defendant had never promised to execute a document providing that moneys he put in the joint

account would be paid back from the proceeds of the sale of her house, that he had written the word loan in the memorandum section of the check after the defendant had signed it, and that the allegations on which he grounded his action were false.[3] There is ample evidence in the record to support the court's findings and ultimate conclusions. The court appropriately rejected the plaintiff's argument that the action had been brought for proper purposes. This was purely recreational litigation brought by a plaintiff against a woman with whom he had had a long term relationship. The trial court therefore did not abuse its discretion in awarding attorney's fees to the defendant.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[3] As further evidence of the plaintiff's having brought the action for an improper purpose, the original complaint alleged that the amount of the so called loan was $55,700. When the defendant alleged the special defense of the statute of frauds requiring a writing "upon any agreement for a loan in an amount which exceeds fifty thousand dollars"; General Statutes § 52-550 (a) (6); the plaintiff amended his complaint to allege that the amount of the loan was only $48,864.

